## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| TOBY HOY, individually and on behalf of all others similarly situated, | :    CIVIL ACTION FILE NO. |
|       Plaintiff, | : |
| v. | :    **COMPLAINT – CLASS ACTION** |
| MEDICARE HEALTH ADVISORS LLC | : |
|       Defendant. | :    **JURY TRIAL DEMANDED** |

_____/

Plaintiff TOBY HOY (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

### NATURE OF ACTION

1.     As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.     However, the TCPA doesn't only restrict robocalls.

3.    "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

4.    "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply,

the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

5.      Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making highly-illegal prerecorded telemarketing calls to cell phone numbers on the National Do Not Call Registry, including his own.

6.      Hoy also alleges that Defendant used automated systems to make telemarketing calls from and into Florida, and that by doing so, Defendant has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

7.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

8.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## **PARTIES**

9.      Plaintiff Toby Hoy is an individual who has a 515 area code number, which is associated with this District.

10.     Defendant Medicare Health Advisors LLC is a Deerfield Beach, FL based health insurance agency that uses illegal telemarketing calls to solicit business from and into this District, including by directing its conduct to 515- area code numbers and using 515- area code numbers to place the calls.

3

**JURISDICTION AND VENUE**

11.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

12.    This Court has specific personal jurisdiction over Defendant because it directed its conduct into this state by calling individuals with 515- area codes, as well as using those same 515- area code numbers on the calls.

13.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions giving rise to the case, namely, the illegal telemarketing conduct, occurred here because the calls were directed into this State and utilized this State's area codes to place the calls.

**TCPA BACKGROUND**

The Enactment of the TCPA and its Regulations

14.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

15.    Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

16.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

17.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

4

18.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Prerecorded Calls to Cell Phones

19.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

20.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

21.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

22.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

23.     Congress singled out these services for special protection either because Congress

realized their special importance in terms of consumer privacy and therefore protected them (as

in the case of cellular phones), or because the numbers are assigned to services for which the

called party is charged, thus shifting the cost of automated or prerecorded messages onto

consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020)

(Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

24.     This cause of action applies to users of any one of the four protected services

(pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch

systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any

service, including residential, VoIP, and landline services, for which the called party is charged

for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6

(E.D. Pa. July 15, 2021).

25.     "Non-emergency prerecorded voice or autodialed calls to [the destinations

enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of

the called party." This includes calls made using artificial or prerecorded voices pitching

services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules -

Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941

n.6 (2016) [hereinafter FCC Advisory].

26.     Non-consensual, non-emergency calls placed using an ATDS or an artificial or

prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory

Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt

and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A)

prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

The Florida Telephone Solicitations Act

27.     The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

28.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

29.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

30.     Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## FACTUAL ALLEGATIONS

31. Defendant is a "person" as the term is defined by 47 U.S.C. § 153(39).

32. Plaintiff Hoy is also a "person" as the term is defined by 47 U.S.C. § 153(39).

33. At no point has the Plaintiff consented to receive telemarketing calls from the Defendant regarding the sale of goods or services, including health insurance services, prior to receiving the automated calls at issue.

Calls to Plaintiff

34. Mr. Hoy's residential telephone number is (515) XXX-XXXX.

35.     That telephone number is a residential telephone line used by Mr. Hoy for personal calls and for personal, family, and household use.

36.     The telephone number is a residential number because it is assigned to a telephone exchange service for consumers, not a telephone exchange service for businesses.

37.     Mr. Hoy does not use the number for business reasons and the number is not registered in the name of or associated with a business.

38.     The number is in Mr. Hoy's name and he pays the bill.

39.     The number is a residential cellular telephone number.

40.     Plaintiff Hoy never consented to receive calls from Defendant.

41.     Plaintiff Hoy never did business with the Defendant.

42.     Mr. Hoy registered his residential cellular telephone number on the National Do Not Call Registry for more than a year prior to the calls at issue, and it has remained on the Registry since that time.

43.     Despite this, the Plaintiff received at least 5 calls from the Defendant, which were sent between August 28, 2024 and November 21, 2024 and solicited him to sign up for health insurance.

44.     The calls the Plaintiff received are reproduced below:

| Date | Caller ID |
|------|-----------|
| 08/28/2024 | 5153171032 |
| 09/07/2024 | 5153171032 |
| 11/22/2024 | 5153171032 |
| 09/13/2024 | 5153171035 |
| 11/21/2024 | 5153171035 |

45.    The Plaintiff answered the call on November 21, 2024, when the Plaintiff heard a robot who asked the Plaintiff qualifying questions about health insurance.

46.    Eventually, the Plaintiff spoke with an individual named "Amber" who confirmed that she was calling from Medicare Health Advisors. "Amber" provided the Plaintiff a callback number of 888-831-2493.

47.    This telephone number appears on the Defendant's website.

48.    The Plaintiff answered the call on November 22, 2024, and heard the same robot as on the previous call.

49.    The Plaintiff called the 515-317-1032 number back and confirmed it led back to the Defendant.

50.    Defendant is a health insurance agency that sells health insurance.

51.    Although the other calls were either missed, rejected, or unanswered, the other calls were sent to also solicit the Plaintiff to purchase an individual or family health insurance plan and were later confirmed to be telephone numbers owned by the Defendant. The Defendant's calls were all made to sell the Plaintiff health insurance plans. They were therefore made for telemarketing purposes.

52.    The Defendant called the Plaintiff at least five times attempting to solicit the Plaintiff for health insurance that Plaintiff had no interest in.

53.    The calls were prerecorded calls because they began with a voice that was obviously a robot, which had distinct pauses in recorded speech snippets, including because the Plaintiff was then transferred to an individual who was obviously a human.

54.    Moreover, the unanswered calls did not leave messages or provide any other indication that a human being would send them.

55.     Defendant therefore used automated marketing software to place the calls.

56.     Moreover, the behavior the Plaintiff experienced of receiving five calls, none of
which left messages, with prerecorded voices, are all further textbook indications that an
automated system was used to place the calls, as it would be illogical for a human to call
someone, only to connect the call to a robot.

57.     Plaintiff never consented to receive calls from Defendant.

58.     Plaintiff never did business with the Defendant.

59.     Based on the foregoing, it is evident that Defendant mass-dials calls
indiscriminately and incessantly using prerecorded voices, including to numbers on the Do Not
Call Registry.

60.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

61.     Plaintiff never provided his consent or requested these calls.

62.     The aforementioned calls to the Plaintiff were unwanted.

63.     The calls were non-consensual encounters.

64.     Plaintiff and all members of the Classes, defined below, have been harmed by the
acts of Defendant because their privacy has been violated and they were annoyed and harassed.
In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate
communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this action on behalf of himself and the following classes (the
"Classes") pursuant to Federal Rule of Civil Procedure 23.

66.     Plaintiff proposes the following Class definitions, subject to amendment as
appropriate:

**Robocall Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) Defendant, or any third party acting on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.

**National Do Not Call Registry Class**: All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S., who, (1) received a telephonic sales call from Defendant made from or into Florida regarding insurance goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

67. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes as he has no interests that conflict with any of the class members.

68. Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

69. Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

70. This Class Action Complaint seeks money damages.

71. The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

72. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that automated methods were used to send the calls.

73.    The joinder of all Class members is impracticable due to the size of the Classes and relatively modest value of each individual claim.

74.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

75.    There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

      (a)  Whether the Defendant used automatic equipment as defined by Florida law to send telemarketing calls;

      (b)  whether the Defendant sent calls using prerecorded voices in violation of the TCPA;

      (c)  whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

      (d)  whether Defendant's conduct constitutes a violation of the TCPA or FTSA;

      (e)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

      (f)  whether Defendant is vicariously liable for calls placed by telemarketing vendors, if any.

76.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

77.    Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

78.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

79.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(b)) on behalf of the Robocall Class**

80.     Plaintiff incorporates the allegations in paragraphs 1-79 as if fully set forth herein.

81.     The Defendant violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

82.     As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

83.     The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

84.     Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**47  U.S.C. 227(c) on behalf of the National Do Not Call Registry Class**

85.     Plaintiff incorporates the allegations in paragraphs 1-79 as if fully set forth herein.

86.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone numbers of Plaintiff and members of the Class on the National Do Not Call Registry.

87.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their numbers on the National Do Not Call Registry in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

88.     If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

### THIRD CAUSE OF ACTION

**Violation of the Florida Telephone Solicitation Act,**
**Fla. Stat. § 501.059**
**On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

89.     Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-79 as if fully set forth herein.

90.     Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

91.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

92.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

93.     Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

94.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

95.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

96.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction under the FTSA against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      Injunctive relief under the TCPA and FTSA prohibiting Defendant from calling telephone numbers in violation of the TCPA or FTSA in the future;

B.      That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

C.      That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing

or willful violation as their actual damages for violations of the FTSA, together with fees and costs of suit; and

       D.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

       E.     Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: June 11, 2025          PLAINTIFF, individually and on behalf of all others similarly situated,

                                /s/ *Eric S. Mail*
                                Eric S. Mail AT0011435
                                **PURYEAR LAW P.C.**
                                3719 Bridge Ave, Suite 6
                                Davenport, IA 52807
                                (P): 563.265.8344
                                mail@puryearlaw.com