IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| TOBY HOY, individually and on behalf of all others similarly situated, | Case No. 4:25-cv-00207-RGE-HCA |
| Plaintiff, | **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MEDICARE HEALTH ADVISORS LLC, | |
| Defendant. | |

4931-8987-8183.1

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD........................................................................................................... 1

ARGUMENT – COUNT I PLAINTIFF CANNOT ESTABLISH A TCPA CLAIM
      BASED ON A PRERECORDED OR ARTIFICIAL VOICE BECAUSE THE
      UNDISPUTED RECORD SHOWS PLAINTIFF SPOKE ONLY WITH LIVE
      HUMAN BEINGS .................................................................................................... 3

ARGUMENT – COUNT II DEFENDANT IS ENTITLED TO SUMMARY
      JUDGMENT ON PLAINTIFF'S TCPA NATIONAL DO-NOT-CALL CLAIM
      BECAUSE THE UNDISPUTED EVIDENCE ESTABLISHES SAFE HARBOR
      PROTECTION UNDER 47 C.F.R ............................................................................. 4

      A.    MHA Maintained Policies and Procedures Designed to Prevent Improper
            Calls ................................................................................................................ 6
      B.    MHA Maintained and Enforced an Internal Do-Not-Call System ........................ 6
      C.    MHA Honored Plaintiff's Do-Not-Call Request ................................................... 7
      D.    MHA Reasonably Relied on Consent-Based Vendor Leads ................................. 7
      E.    Any Alleged Violation Would, At Most, Constitute an Isolated Error
            Despite MHA's Compliance Procedures ............................................................ 7

ARGUMENT – COUNT III PLAINTIFF CANNOT ESTABLISH AN FTSA
      VIOLATION BECAUSE THE RECORD CONTAINS NO COMPETENT
      EVIDENCE OF AN AUTOMATED DIALING SYSTEM OR RECORDED
      MESSAGE ............................................................................................................... 8

CONCLUSION.................................................................................................................... 10

4931-8987-8183.1

TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Anda v. Wickes Furniture Co., Inc.*,
  517 F.3d 526 (8th Cir. 2008) ...............................................................................................1
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)........................................................1
*Atkinson v. City of Mt. View*,
  709 F.3d 1201 (8th Cir. 2013) .............................................................................................1
*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)........................................................1
*Dahl v. Rice Cnty.*,
  621 F.3d 740 (8th Cir. 2010) ...............................................................................................1
*Dick v. Dickinson State Univ.*,
  826 F.3d 1054 (8th Cir. 2016) .............................................................................................1
*Elzen v. Am. Home Shield Corp.*,
  No. 24-C-1206, 2026 U.S. Dist. LEXIS 87347 (E.D. Wis. Apr. 21, 2026).....................4-5, 7
*Johansen v. EFinancial LLC*,
  No. 2:20-cv-01351-DGE, 2022 U.S. Dist. LEXIS 8798 (W.D. Wash. Jan. 18,
  2022) .....................................................................................................................................5
*Johansen v. EFinancial LLC*,
  No. 2:20-cv-01351-RAJ-BAT, 2021 U.S. Dist. LEXIS 251092 (W.D. Wash.
  June 11, 2021)....................................................................................................................4, 7
*Klassen v. Advanced Mktg. & Processing, Inc.*,
  No. 8:21-cv-761-MSS-MRM, 2023 U.S. Dist. LEXIS 241367 (M.D. Fla. Mar.
  1, 2023) ..............................................................................................................................5, 7
*Moon Seed LLC v. Weidner*,
  604 F. Supp. 3d 780 (S.D. Iowa 2022), appeal dismissed, No. 22-2228, 2022
  WL 17491649 (8th Cir. July 14, 2022)..................................................................................2
*Ricci v. DeStefano*,
  557 U.S. 557, 129 S.Ct. 2658 (2009)....................................................................................1
*Smith v. Int'l Paper Co.*,
  523 F.3d 845 (8th Cir. 2008) ...............................................................................................1
*Torgerson v. City of Rochester*,
  643 F.3d 1031 (8th Cir. 2011) (en banc) .............................................................................1

**FEDERAL STATUTES**

47 U.S.C. § 227(b) ......................................................................................................................2

**STATE STATUTES**

Fla. Stat. § 501.059(8)(a) ...........................................................................................................8

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(c)(2)(i) ................................................................................................4

Fed. R. Civ. P. 56 ...............................................................................................................1

Fed. R. Civ. P. 56(a) ..........................................................................................................1

4931-8987-8183.1

**INTRODUCTION**

Plaintiff's case begins with a simple premise: that Medicare Health Advisors ("MHA") called him using a robotic or prerecorded voice. Discovery proved otherwise. When confronted with the actual call recordings during his deposition, Plaintiff repeatedly admitted that the voices he heard were live human beings. Not robots, not recordings, and not artificial voices. The central factual premise of the Complaint therefore collapses under Plaintiff's own testimony.

The remainder of Plaintiff's claims fare no better. The undisputed evidence establishes that MHA maintained and enforced telemarketing compliance procedures, including internal do-not-call protections, onboarding and training protocols, call disposition requirements, and consent-based lead acquisition practices. Any calls made to Plaintiff were the result of an error for which the TCPA's safe harbor provision provides protection. Plaintiff likewise offers no competent evidence that MHA used an automated dialing system within the meaning of the Florida Telephone Solicitation Act. After full discovery, Plaintiff is left not with evidence, but with speculation and allegations contradicted by the record.

Summary judgment exists to prevent unsupported claims from proceeding to trial where no genuine dispute of material fact remains. Here, Plaintiff's own admissions, Defendant's preserved call recordings, business records, and sworn testimony foreclose each theory advanced in the Complaint. Because Plaintiff cannot establish prerecorded or artificial voice use, cannot overcome the TCPA safe harbor, and cannot prove qualifying automation under the FTSA, Defendant is entitled to judgment as a matter of law on all counts.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–

23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists where the issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact is material if it 'might affect the outcome of the suit.'" *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Anderson*, 477 U.S. at 248). Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

The nonmoving party "receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mt. View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)). "In order to establish the existence of a genuine issue of material fact, a plaintiff may not merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 531 (8th Cir. 2008) (cleaned up). "The plaintiff must substantiate [the] allegations with sufficient probative evidence that would permit a finding in [plaintiff's] favor." *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and the moving party is entitled to judgment as a matter of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658 (2009)); *Moon Seed LLC v. Weidner*, 604 F. Supp. 3d 780, 787–88 (S.D. Iowa 2022), appeal dismissed, No. 22-2228, 2022 WL 17491649 (8th Cir. July 14, 2022).

Here, there exists no genuine issue of material fact, and the undisputed material facts demonstrate that MHA is entitled to judgment as a matter of law.

## ARGUMENT – COUNT I

**Plaintiff Cannot Establish a TCPA Claim Based on a Prerecorded or Artificial Voice Because the Undisputed Record Shows Plaintiff Spoke Only With Live Human Beings.**

Plaintiff's first cause of action alleges Defendant violated 47 U.S.C. § 227(b) by placing calls using a prerecorded or artificial voice. Yet after discovery, Plaintiff has no admissible evidence establishing that any Medicare Health Advisors ("MHA") call involved a prerecorded or artificial voice.

Plaintiff's allegations in the Complaint are not evidence. Rather, the evidentiary record developed during discovery directly contradicts the theory pled. Plaintiff specifically alleged that he "heard a robot" and that Defendant's calls "began with a voice that was obviously a robot." (Doc. 1 ¶¶ 45, 53). But when confronted with the actual call recordings during deposition, Plaintiff repeatedly admitted the voices on the calls were not robotic.

Plaintiff testified he does not record calls he receives. (SOF ¶ 61). Thus, the only preserved recordings are Defendant's business records—the four connected calls located through MHA's search of its systems. MHA's CEO, Max Jaffy, searched MHA's call-recording records and identified only four connected calls involving Plaintiff, Bates 0110–0113. Supplemental Jaffy (SOF ¶¶ 59-60).

Plaintiff listened to each of those recordings during deposition and repeatedly acknowledged the voices were live humans:

- For Bates 0110 / Call 27, Plaintiff testified the voice he heard was not robotic.

- For Bates 0111 / Call 28, Plaintiff testified: "That was a live one."

- For Bates 0112 / Call 29, Plaintiff testified the speaker "didn't sound like a robot voice."

3

- For Bates 0113 / Call 31, Plaintiff testified "No" when asked whether the voice was robotic.

(SOF ¶¶ 62-65).

The recordings themselves likewise demonstrate ordinary conversational exchanges between Plaintiff and live representatives. During Call 27, Plaintiff confirmed his identity, answered Medicare-related questions, and agreed to be transferred to a licensed specialist. (SOF ¶¶ 69-70, 76).

Defendant's evidence further confirms no prerecorded or artificial voice was used. Mr. Jaffy testified that Plaintiff spoke with live individuals during the calls and that MHA never used prerecorded or artificial voices. (SOF ¶ 46).

This record leaves no genuine issue of material fact. Plaintiff's own testimony defeats his claim. A party cannot survive summary judgment by relying upon allegations contradicted by undisputed record evidence and his own admissions.

Because Plaintiff cannot establish the required element that Defendant used an artificial or prerecorded voice, Defendant is entitled to judgment as a matter of law on Count I.

**ARGUMENT – COUNT II**

**Defendant Is Entitled to Summary Judgment on Plaintiff's TCPA National Do-Not-Call Claim Because the Undisputed Evidence Establishes Safe Harbor Protection Under 47 C.F.R. § 64.1200(c)(2)(i).**

Plaintiff's second claim arises under the TCPA's National Do-Not-Call provisions. Defendant is entitled to summary judgment because the undisputed evidence establishes the TCPA's regulatory safe harbor.

The FCC regulations provide that a seller will not be liable for National Do-Not-Call violations if it demonstrates that it:

(1) written procedures to comply with the national do-not-call rules;

(2) training of personnel on those procedures;

(3) maintenance of a list of phone numbers that the entity cannot contact;

(4) the use of "a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules;" and

(5) the use of "a process to ensure that it does not sell, rent, lease, purchase or use the national do-not-call database," or any part thereof, for any purpose except compliance with this section and any such state or federal law to prevent telephone solicitations to telephone numbers registered on the national database.

47 C.F.R. § 64.1200(c)(2)(i); *Elzen v. Am. Home Shield Corp.*, No. 24-C-1206, 2026 U.S. Dist. LEXIS 87347, at 29 (E.D. Wis. Apr. 21, 2026).

Courts routinely grant summary judgment where a defendant demonstrates meaningful compliance systems—even where a consent involves third-party lead sources.

In *Johansen v. EFinancial LLC*, No. 2:20-cv-01351-RAJ-BAT, 2021 U.S. Dist. LEXIS 251092 (W.D. Wash. June 11, 2021), the court granted summary judgment where the defendant maintained written policies, annual compliance training, internal DNC procedures, vendor oversight, and consent-based lead acquisition processes. The district court adopted that recommendation in full. *Johansen v. EFinancial LLC*, No. 2:20-cv-01351-DGE, 2022 U.S. Dist. LEXIS 8798 (W.D. Wash. Jan. 18, 2022).

Likewise, in *Klassen v. Advanced Mktg. & Processing, Inc.,* No. 8:21-cv-761-MSS-MRM, 2023 U.S. Dist. LEXIS 241367 (M.D. Fla. Mar. 1, 2023), the court found summary judgment appropriate where a telemarketing defendant relied upon vendor-supplied lead information and maintained procedures designed to avoid DNC violations.

4931-8987-8183.1

Most recently, in *Elzen,* summary judgment was granted where the defendant demonstrated consent-based lead acquisition and maintained records supporting its belief that consent existed.

The same evidence exists here.  (*See* SOF ¶¶ 12-46).  MHA relied on vendors which represented they would maintain procedures to avoid DNC violations. (SOF ¶¶ 19-21, 23). Further, leads MHA followed its own policies and procedures to prevent improper calls. (SOF ¶¶ 27-46).

### A.   MHA Maintained Policies and Procedures Designed to Prevent Improper Calls.

MHA maintained onboarding and training procedures for agents and call-center personnel. Supplemental (SOF ¶¶ 19, 23, 35-36). Agents were not permitted to begin taking calls without onboarding, training, mock calls, and instruction concerning acceptable call practices. (SOF ¶ 28, 36).

MHA's training materials expressly identify compliance as a "top priority" and provide instruction regarding scripting and CMS compliance expectations. (SOF ¶¶ 29-31).

### B.   MHA Maintained and Enforced an Internal Do-Not-Call System.

MHA maintained an internal DNC list throughout the relevant period. (SOF ¶¶ 39-40).

The system was not nominal. It contained hundreds of thousands of entries:

- approximately 385,844 entries in 2023;

- approximately 453,632 entries during the first half of 2024;

- approximately 395,583 entries during the second half of 2024; and

- approximately 398,488 entries in 2025.

(SOF ¶ 40).

Agents were required to enter call dispositions after each interaction, including a "Do Not Call" disposition that automatically suppressed future calls. (SOF ¶¶ 41-44).

### C.    MHA Honored Plaintiff's Do-Not-Call Request.

Plaintiff requested removal during Call 31, stating:

"Get my name off your list. Get my number off your list."

(SOF ¶ 77).

The call records show Attempt 31 was coded "DO NOT CALL," and no additional call activity appears after that disposition. (SOF ¶¶ 78-81).

Mr. Jaffy confirmed through review of MHA records that Plaintiff's number was not called again after the December 5, 2024 DNC designation. (SOF ¶ 81).

### D.    MHA Reasonably Relied on Consent-Based Vendor Leads.

MHA purchased inbound calls through Inbounds/Data Prosper under an insertion order requiring consent-based leads. The governing lead-purchase terms expressly warranted that:

> The Leads have been collected from individuals who have provided prior express written consent required by law.

(SOF ¶ 18).

MHA's policy was to only purchase consent-based leads. (SOF ¶ 45).

Lead records associated with Plaintiff reflected Plaintiff's name, phone number, and email address. (SOF ¶¶ 48-55).

The Verisk report further tied the lead to a matching certificate identifier. (SOF ¶¶ 52-54).

Even when Plaintiff disputes consent, which he does here, the safe harbor inquiry asks whether Defendant maintained reasonable procedures—not whether consent can be definitively authenticated years later through third-party litigation discovery.

### E.    Any Alleged Violation Would, At Most, Constitute an Isolated Error Despite MHA's Compliance Procedures.

The TCPA safe harbor exists because telemarketing compliance systems are not expected to eliminate every conceivable error. Rather, the regulation protects sellers that maintain and

7

implement reasonable procedures designed to avoid calls to consumers who should not be contacted.

Here, the undisputed evidence demonstrates that MHA maintained a consent-based lead acquisition process, onboarding and compliance training, internal suppression procedures, required call dispositions, vendor oversight, and a functioning do-not-call system. (SOF ¶¶ 18–45).

MHA also relied on vendor representations that purchased leads were associated with prior express written consent. (See SOF ¶¶ 18, 23).

Even accepting Plaintiff's theory for purposes of argument, any alleged call to Plaintiff would have occurred despite MHA's existing compliance framework—not because MHA lacked procedures designed to prevent such calls.

The record therefore reflects, at most, an isolated error within an otherwise functioning compliance system, precisely the circumstance the TCPA safe harbor was designed to address.

The undisputed record demonstrates MHA maintained policies, training, suppression systems, vendor consent requirements, and actual DNC enforcement. Under *Johansen*, *Klassen*, and *Elzen*, Defendant is entitled to summary judgment on Count II.

## ARGUMENT – COUNT III

**Plaintiff Cannot Establish an FTSA Violation Because the Record Contains No Competent Evidence of an Automated Dialing System or Recorded Message.**

Plaintiff's FTSA claim fails for substantially the same reason as Count I.

The FTSA prohibits telephonic sales calls involving "an automated system for the selection and dialing of telephone numbers or the playing of a recorded message" absent prior express written consent. Fla. Stat. § 501.059(8)(a). (Doc. 1 at ¶ 91).

8

Plaintiff bears the burden of proving use of qualifying technology. Here, Plaintiff offers only speculation.

Plaintiff's own testimony defeats the prerecorded-message theory. As discussed above, Plaintiff listened to each preserved recording and admitted the speakers were not robotic. (SOF ¶¶ 62-65). Defendant's recordings show conversational exchanges with live agents.

Plaintiff also lacks evidence establishing an automated dialing system within the meaning of the FTSA.

The Complaint merely assumes automation because multiple calls occurred and some calls did not leave messages. (Doc. 1 at ¶¶ 54–56). But unsupported assumptions cannot create a triable issue.

The record instead demonstrates human involvement throughout the calling process:

- MHA used trained agents and call-center personnel.

- Virtual Buddy personnel participated in outbound calling activity.

- Calls involved live qualification conversations.

- Plaintiff engaged directly with human callers.

- MHA required disposition coding and manual DNC handling.

(SOF ¶¶ 63-72).

Plaintiff has no expert testimony, no technical evidence, no dialer configuration evidence, and no testimony identifying an automated selection-and-dialing platform.

At most, Plaintiff asks the Court to infer automation solely because multiple calls occurred. That inference is insufficient at summary judgment.

Because Plaintiff lacks evidence establishing either prerecorded messages or an automated dialing system, Defendant is entitled to judgment as a matter of law on Count III.

9

**CONCLUSION**

Plaintiff alleged he received robotic or prerecorded calls, yet the preserved recordings and Plaintiff's own sworn testimony establish that he spoke with live human beings. The undisputed evidence further demonstrates that Medicare Health Advisors maintained and enforced telemarketing compliance procedures, including internal do-not-call protections, onboarding and training protocols, call disposition requirements, and consent-based lead acquisition practices.

Even accepting Plaintiff's allegations for purposes of argument, the record establishes an isolated error occurring despite MHA's existing compliance framework. The TCPA's safe harbor exists precisely to protect entities that maintain reasonable procedures designed to prevent improper calls, even where an inadvertent error allegedly occurs. Plaintiff likewise offers no competent evidence that MHA used an automated dialing system or prerecorded message within the meaning of the Florida Telephone Solicitation Act. After full discovery, Plaintiff remains unable to support his claims with admissible evidence sufficient to create a genuine dispute for trial.

Because the undisputed record forecloses each theory advanced in the Complaint, Defendant Medicare Health Advisors LLC respectfully requests that the Court grant summary judgment in its favor on Counts I, II, and III, enter judgment accordingly, and award such further relief as the Court deems just and proper.

4931-8987-8183.1

Dated April 30, 2026.

MEDICARE HEALTH ADVISORS LLC,
Defendant

By: */s/ James A. Peterson*

    James A. Peterson, Esq.
    *(admitted pro hac vice)*
    PETERSON LEGAL P.A.
    5079 North Dixie Highway, Suite 105
    Oakland Park, Florida 33334
    Telephone: (754) 444-8076
    james@petersonlegal.com

    Victoria H. Buter (#AT0009169)
    KUTAK ROCK LLP
    The Omaha Building
    1650 Farnam Street
    Omaha, Nebraska 68102-2186
    Telephone: (402) 346-6000
    Facsimile: (402) 346-1148
    vicki.buter@kutakrock.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2026, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to the following attorneys registered with the CM/ECF system:

Eric S. Mail, Esq.
PURYEAR LAW P.C.
3719 Bridge Avenue, Suite 6
Davenport, Iowa 52807
mail@puryearlaw.com

Anthony Paronich, Esq.
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

*/s/ James A. Peterson*
James A. Peterson, Esq.

11