IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| TOBY HOY, individually and on behalf of all others similarly situated, | Case No. 4:25-cv-00207-RGE-HCA |
| Plaintiff, | **DEFENDANT'S STATEMENT OF MATERIAL FACTS** |
| v. | |
| MEDICARE HEALTH ADVISORS LLC, | |
| Defendant. | |

Defendant, MEDICARE HEALTH ADVISORS LLC, in support of its Motion for Summary Judgment and pursuant to Local Rule 56(a)(3), hereby submits its Statement of Material Facts for which it contends there is no genuine issue to be tried, and states as follows:

**SECTION A — BUSINESS OPERATIONS / RECORDKEEPING**

1.    Medicare Health Advisors LLC ("MHA") assists individuals with optimizing Medicare Part C plans.  (App. at Ex. 13, APPX_131-32 (Jaffy Decl. ¶ 3)).

2.    MHA provides information and benefit options to Medicare beneficiaries. (App. at Ex. 15, APPX_170 (Jaffy Dep. 12:13–25)).

3.    Max Jaffy has been employed by MHA since the company's inception in January 2023 and currently serves as Chief Executive Officer.  (App. at Ex. 13, APPX_131-32 (Jaffy Decl. ¶ 3)).

4.    In his role at MHA, Mr. Jaffy oversees marketing programs and operations.  (App. at Ex. 13, APPX_131-32 (Jaffy Decl. ¶ 3)).

5.    Mr. Jaffy is familiar with MHA's business operations, policies, practices, and records-keeping procedures. (App. at Ex. 13, APPX_131-32 (Jaffy Decl. ¶ 3)).

6.    MHA maintains business records relating to its marketing programs. (App. at Ex.

13, APPX_131-32 (Jaffy Decl. ¶¶ 3-4)).

7.      MHA regularly maintains records near or at the time of the act or event recorded. (App. at Ex. 13, APPX_132 (Jaffy Decl. ¶ 4)).

8.      Certain business records relied upon by MHA are created by third parties and incorporated into MHA's records. (App. at Ex. 13, APPX_132 (Jaffy Decl. ¶ 5)).

9.      According to Mr. Jaffy, MHA routinely relies upon incorporated third-party records in conducting business operations. (App. at Ex. 13, APPX_132 (Jaffy Decl. ¶ 4)).

10.     MHA reaches potential consumers by telephone or telesales. (App. at Ex. 15, APPX_171 (Jaffy Dep. 13:1-7)).

11.     MHA obtains telephone numbers from multiple sources. (App. at Ex. 15, APPX_172-73 (Jaffy Dep. 15:16–16:7)).

**SECTION B — LEAD ACQUISITION / VENDOR RELATIONSHIP**

12.     Inbounds.com was one of MHA's lead vendors. (App. at Ex. 15, APPX_173 (Jaffy Dep. 20:1–8)).

13.     MHA purchased inbound calls through Inbounds LLC d/b/a Inbounds.com pursuant to an insertion order executed September 18, 2024. (App. at Ex. 12, APPX 126-27).

14.     The insertion order identified Medicare Health Advisors as the purchaser and Max Jaffy as the primary contact. (App. at Ex. 12, APPX 126).

15.     The insertion order identified the product purchased as "Inbound Calls." (App. at Ex. 12, APPX 126).

16.     The insertion order incorporated Inbounds.com Advertiser Lead Purchase Terms. (App. at Ex. 12, APPX 127).

17.     The Lead Purchase Terms state that Inbounds agreed to sell "leads, referrals, clicks,

calls." (App. at Ex. 12, APPX 128 at § 1).

18.    Inbounds represented and warrantied that "[t]he Leads have been collected from individuals who have provided prior express written consent required by law…." (App. at Ex. 12, APPX 128 at § 3(i)).

19.    According to Mr. Jaffy, MHA's policy and practice was to always obtain consent before contacting consumers. (App. at Ex. 13, APPX_133 (Jaffy Decl. ¶ 9)).

20.    Jaffy understood Data Prosper to be Inbounds.com's prior name. (App. at Ex. 15, APPX_173 (Jaffy Dep. 20:14–23)).

21.    Inbounds.com, also known as Data Prosper, provided MHA with Plaintiff's phone number. (App. at Ex. 15, APPX_174 (Jaffy Dep. 21:1–4)).

22.    MHA understood Inbounds.com to provide "opt-in leads for Medicare-qualified consumers." (App. at Ex. 15, APPX_174 (Jaffy Dep. 21:11–14)).

23.    Prior to the Inbounds insertion order executed September 18, 2024, MHA had a substantially similar business relationship with Data Prosper, as MHA always required its vendors to provide leads that came with prior express written consents to be contacted. (App. at Ex. 2, APPX_014 (Supp. Jaffy Decl. ¶¶ 8–11)).

**SECTION C — COMPLIANCE / TRAINING**

24.    MHA used a company called Virtual Buddy 24/7 in connection with outbound calls. (App. at Ex. 15, APPX_175 (Jaffy Dep. 37:9–24)).

25.    Virtual Buddy helped engage consumers and qualify interest in benefit-upgrade opportunities. (App. at Ex. 15, APPX_175-76 (Jaffy Dep. 37:25–38:3)).

26.    Virtual Buddy had the phone numbers to call but limited other access to consumer information. (App. at Ex. 15, APPX_176 (Jaffy Dep. 38:4–13)).

4918-7044-1639.1

27.     Virtual Buddy used a script prepared with MHA. (App. at Ex. 15, APPX_176 (Jaffy Dep. 38:14–18)).

28.     MHA maintains a training presentation for agents. (App. at Ex. 4 (APPX_042-101)).

29.     The training presentation states that compliance is a top priority at MHA. (App. at Ex. 4, APPX_044)).

30.     The training presentation states that agents are trained on "what is and isn't allowed." (*Id.*)

31.     The training presentation states that agents receive instruction regarding scripting and CMS guidelines. (*Id.*)

32.     Virtual Buddy maintained a written memorandum concerning compliance with do-not-call procedures dated February 20, 2025.  (App. at Ex. 11 (APPX_125)).

33.     The memorandum states that customers must be placed on the do-not-call list immediately when requested. (*Id.*)

34.     The memorandum states that consumers requesting removal from future calls must be placed on the DNC list. (*Id.*)

35.     The training deck, or a deck substantially similar, was in use as of July 2024.  (App. at Ex. 2, APPX_014 (Supp. Jaffy Decl. ¶¶ 12–13)).

36.     No agent was permitted to go live on phones without training, which took one to two weeks and included mock calls.  (App. at Ex. 2, APPX_014 (Supp. Jaffy Decl. ¶¶ 14–16)).

37.     The DNC memo was not a new policy; substantially similar DNC instructions were in place during August–December 2024.  (App. at Ex. 2, APPX_016 (Supp. Jaffy Decl. ¶¶ 37–39)).

4

38.     MHA conducted weekly audits of Virtual Buddy calls, coached against prerecorded messages, and never observed prerecorded voices during those audits.  (App. at Ex. 2, APPX_015 (Supp. Jaffy Decl. ¶¶ 21–25)).

39.     MHA, at all times, maintained an internal do-not-call list and DNC disposition process. (App. at Ex. 2, APPX_015 (Supp. Jaffy Decl. ¶¶ 26–27)).

40.     MHA's internal do-not-call suppression list contained approximately 385,844 entries in 2023; 453,632 entries in the first half of 2024; 395,583 entries in the second half of 2024; and 398,488 entries in 2025.  (App. at Ex. 2, APPX_015-16 (Supp. Jaffy Decl. ¶¶ 28–31)).

41.     Both MHA agents and Virtual Buddy agents were required to select a call disposition before moving to another call.  (App. at Ex. 2, APPX_016 (Supp. Jaffy Decl. ¶¶ 32–33)).

42.     "Do Not Call" was one available disposition within MHA's dialing system. (App. at Ex. 2, APPX_016 (Supp. Jaffy Decl. ¶ 34)).

43.     Once an agent selected a "Do Not Call" disposition, the number was automatically added to MHA's internal do-not-call list. (App. at Ex. 2, APPX_016 (Supp. Jaffy Decl. ¶ 35)).

44.     Once a number was designated "Do Not Call," the dialer prevented future calls to that number.  (*Id.*)

45.     MHA only purchased consent leads and would not buy leads that were not represented to include prior express written consent.  (App. at Ex. 2, APPX_014 (Supp. Jaffy Decl. ¶¶ 10–11)).

46.     MHA never used prerecorded or artificial voices to make calls and never allowed Virtual Buddy to use prerecorded or artificial voices to make calls.  (App. at Ex. 13, APPX_131-32 (Jaffy Decl. ¶ 8)); (App. at Ex. 2, APPX_015 (Supp. Jaffy Decl. ¶¶ 24–25)).

**SECTION D — PLAINTIFF LEAD INFORMATION**

47.    MHA reviewed records associated with Plaintiff Toby Hoy's telephone number. (App. at Ex. 13, APPX_132 (Jaffy Decl. ¶¶ 4–6)).

48.    An email from Jimmy Marshall of Inbounds dated July 1, 2025 transmitted a lead record concerning Plaintiff's lead. (App. at Ex. 1, APPX_005-06).

49.    A lead record associated with Plaintiff reflected the first name "Toby" and last name "Hoy."  (App. at Ex. 5, APPX_102).

50.    The lead record reflected the telephone number 515-808-0280. (*Id.*)

51.    The lead record reflected the email address hoytoby973@hotmail.com. (*Id.*)

52.    The lead record reflected Certificate ID 929098A1-B9BD-6980-9F05-846FA0ACA098. (*Id.*)

53.    An email from Jimmy Marshall of Inbounds dated July 7, 2025 transmitted a Verisk Marketing Solutions report concerning Plaintiff's lead. (App. at Ex. 1, APPX_004-012).

54.    The Verisk Marketing Solutions report concerning Plaintiff's lead includes the same Certificate ID (labeled as Universal LeadID) shown in the lead record. (App. at Ex. 1, APPX_010).

55.    The Verisk Marketing Solutions report concerning Plaintiff's lead includes opt-in language purportedly agreed upon by the person allegedly filling out the lead record. (App. at Ex. 1, APPX_010-11).

**SECTION E — CALL RECORDS / LIVE SPEAKERS / DNC DISPOSITION**

56.    Plaintiff testified he was receiving telemarketing calls from "many places," including MHA.  (App. at Ex. 14, APPX_156 (Hoy Dep. 42:12–14)).

57.    Plaintiff clarified that the "many places" were in the Medicare space. (App. at Ex.

6

14, APPX_156-57 (Hoy Dep. 42:16–43:1)).

58.     Plaintiff testified that he is not currently a recipient of Medicare. (App. at Ex. 14, APPX_154-55 (Hoy Dep. 38:24–39:4)).

59.     During the relevant period, MHA's ordinary practice was to record connected calls, which were stored through Amazon Web Services. (App. at Ex. 2, APPX_016 (Supp. Jaffy Decl. ¶¶ 40–42)).

60.     Mr. Jaffy searched for all call recordings involving Toby Hoy and found only the four recordings produced in discovery, labeled as Bates 0110 to 0113. (App. at Ex. 2, APPX_017 (Supp. Jaffy Decl. ¶¶ 43–46)).

61.     Plaintiff does not record telephone calls when he receives them. (App. at Ex. 14, APPX_158-59 (Hoy Dep. 55:22–56:6)).

62.     After listening to the audio recording labeled Bates 0110, also known as Call 27, Plaintiff testified that the voice he heard during the first four minutes and 15 seconds of the record, other than his own voice, was not a robot voice. (App. at Ex. 14, APPX_160 (Hoy Dep. 79:7–19)).

63.     After listening to the audio recording labeled Bates 0111, also known as Call 28, Plaintiff testified that the female voice on Bates 111 / Call 28 was not a robot voice and stated, "That was a live one." (App. at Ex. 14, APPX_161 (Hoy Dep. 82:3–11)).

64.     After listening to the audio recording labeled Bates 0112, also known as Call 29, Plaintiff testified that the other voice on Bates 112 / Call 29 "didn't sound like a robot voice." (App. at Ex. 14, APPX_162 (Hoy Dep. 83:4–8)).

65.     After listening to the audio recording labeled Bates 0113, also known as Call 31, Plaintff, when asked whether that other voice on the recording (other than his own) was a robot voice, Plaintiff answered, "No." (App. at Ex. 14, APPX_164 (Hoy Dep. 88:13–17)).

4918-7044-1639.1

66.     Mr. Jaffy states that he reviewed call recordings associated with Plaintiff. (App. at Ex. 13, APPX_133 (Jaffy Decl. ¶ 8)).

67.     Mr. Jaffy states that Plaintiff spoke with live individuals during those calls. (*Id.*)

68.     Mr. Jaffy states that no prerecorded or artificial voice was used during the calls. (*Id.*)

69.     During Call 27, Plaintiff confirmed he was Toby. (App. at Ex. 6, APPX_105 (Call 27 Tr. 3:14–16)).

70.     During Call 27, Plaintiff answered "Yeah" when asked whether he had Medicare Parts A & B and "Yeah" when asked whether he had the blue card. (App. at Ex. 6, APPX_106 (Call 27 Tr. 4:1–6)).

71.     During Call 27, Plaintiff answered "Yes" when asked whether he was over 65 years old or younger. (App. at Ex. 6, APPX_106 (Call 27 Tr. 4:18–21).

72.     During Call 27, Plaintiff later again answered "Yes" when asked whether he was over 65 years old. (App. at Ex. 6, APPX_107 (Call 27 Tr. 5:8–13)).

73.     In deposition, Plaintiff testified his date of birth is ███████ 1968. (App. at Ex. 14, APPX_163 (Hoy Dep. 86:5–6)).

74.     In deposition, Plaintiff testified he was 57 years old. (App. at Ex. 14, APPX_153 (Hoy Dep. 8:1–2)).

75.     In deposition, Plaintiff testified he is not currently a Medicare recipient because he does not qualify and is not old enough.  (App. at Ex. 14, APPX_154-55 (Hoy Dep. 38:24–39:4)).

76.     During Call 27, Plaintiff agreed to stay on the line to be transferred to a licensed specialist. (App. at Ex. 6, APPX_108 (Call 27 Tr. 6:5–17)).

77.     During Call 31, Plaintiff requested removal, stating: "Get my name off your list.

Get my number off your list." (App. at Ex. 9, APPX_122 (Call 31 Tr. 3:9–11)).

78.     The final recorded call attempt reflected in MHA's call records occurred on December 5, 2024 and is identified as Attempt 31. (App. at Ex. 10 (APPX_124)).

79.     Attempt 31 reflects a call disposition of "DO NOT CALL." (*Id.*)

80.     No call activity appears in MHA's call records after the December 5, 2024 "DO NOT CALL" disposition.  (*Id.*)

81.     According to MHA's records, Plaintiff's number was not called again after the December 5, 2024 Do Not Call disposition. (*Id.*); ((App. at Ex. 2, APPX_017 (Supp. Jaffy Decl. ¶ 47)).

Dated April 30, 2026.

MEDICARE HEALTH ADVISORS LLC,
Defendant

By: */s/ James A. Peterson*
James A. Peterson, Esq.
*(admitted pro hac vice)*
PETERSON LEGAL P.A.
5079 North Dixie Highway, Suite 105
Oakland Park, Florida 33334
Telephone: (754) 444-8076
james@petersonlegal.com

Victoria H. Buter (#AT0009169)
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, Nebraska 68102-2186
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
vicki.buter@kutakrock.com

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2026, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to the following attorneys registered with the CM/ECF system:

Eric S. Mail, Esq.
PURYEAR LAW P.C.
3719 Bridge Avenue, Suite 6
Davenport, Iowa 52807
mail@puryearlaw.com

Anthony Paronich, Esq.
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA  02043
anthony@paronichlaw.com

*/s/ James A. Peterson*
James A. Peterson, Esq.

4918-7044-1639.1