**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

TOBY HOY, individually and on behalf of all
others similarly situated,

      Plaintiff,

v.

MEDICARE HEALTH ADVISORS LLC

      Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
/

CIVIL ACTION FILE NO. 4:25-cv-00207-
RGE-HCA

**PLAINTIFF TOBY HOY'S APPENDIX IN SUPPORT OF
ADDITIONAL STATEMENT OF MATERIAL FACTS IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Toby Hoy, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56(b)(4), hereby submits his Appendix in Opposition of Plaintiff's Additional Statement of Material Facts in Support of Defendant's Motion for Summary Judgment:

1.      Exhibit 1 is a true and correct copy of Defendant's Answers, Responses, and Objections to Plaintiff's First Set of Interrogatories and Requests for Production.

2.      Exhibit 2 is a true and correct copy of the unincluded relevant excerpted portions of the Deposition of Max Jaffy.

3.      Exhibit 3 is a true and correct copy of the referenced portions of the Plaintiff's US Cellular Call Logs.

1

RESPECTFULLY SUBMITTED AND DATED this 11th day of June, 2026.

*s/ Anthony I. Paronich*
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com
*Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2026, I electronically filed the foregoing with the Clerk

of the Court, using the CM/ECF system, which sent notification of such filing to all attorneys

registered with the CM/ECF system.

*s/ Anthony I. Paronich*
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com
*Counsel for the Plaintiff*

**PLAPPX_2**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| TOBY HOY, individually and on behalf of all others similarly situated, | Case No. 4:25-cv-00207-RGE-HCA |
| Plaintiff, | |
| v. | **DEFENDANT'S ANSWERS, RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| MEDICARE HEALTH ADVISORS LLC, | |
| Defendant. | |

Defendant Medicare Health Advisors LLC ("Defendant" or "Medicare Health"), by and through its attorneys and pursuant to Fed. R. Civ. P. 33, Local Rule 33, Fed. R. Civ. P. 34 and Local Rule 34, hereby provides the following answers, responses and objections Plaintiff Toby Hoy's ("Plaintiff" or "Mr. Hoy") First Set of Interrogatories and First Set of Requests for Production of Documents to Defendant.

**PRELIMINARY STATEMENTS TO INTERROGATORIES**

Defendant interposes the following Preliminary Statement and comments to Plaintiff's First Set of Interrogatories. These apply to each individual discovery request. To the extent that certain objections are cited in response to a specific request, Defendant provides specific citations because the objections are believed to be particularly applicable to that request. These specific citations are not to be construed as a waiver of any other general objections applicable to information falling within the scope of the discovery request.

1.    Defendant's investigation is ongoing. Defendant reserves the right to amend, modify and/or revise these objections and answers, or to produce additional information and documents, as a result of such investigation.

4914-0364-3244.1

**EXHIBIT 1**

**PLAPPX_3**

2.      A statement herein that documents will be produced is a representation of Defendant's willingness to produce such documents if they exist and can be located by a reasonable, good faith effort, and not a representation that the documents in fact exist.

3.      Defendant specifically objects to Plaintiff's Definition No. 11 which seeks to require a near summary of each and every document that may be responsive to a particular interrogatory, as this would impose an undue burden on Defendant.  Fed. R. Civ. P. 33(d) allows Defendant the option to produce business records in response to an interrogatory, "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party…" All of Defendant's document productions have been or will be produced as searchable documents with underlying metadata, and the documents are therefore equally as searchable by Plaintiff. Defendant will not identify documents with the level of detail requested by Plaintiff.

## ANSWERS AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each such person provided information.

**RESPONSE TO INTERROGATORY NO. 1:**  Medicare Health objects to this Interrogatory for the reason that it seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine.  Subject to and without waiving these objections, Medicare Health states that counsel for Medicare Health prepared the answers to these Interrogatories based upon relevant information and documents provided by Max Jaffy.

2

4914-0364-3244.1

PLAPPX_4

**INTERROGATORY NO. 2:** Identify all employees or vendors involved in making outbound calls as part of the campaign that contacted the Plaintiff. This includes, but is not limited to, (a) third parties that you contract with who make telemarketing calls to generate leads (b) the dialing system platform or provider used to make calls (c) where the phone numbers to make the calls is obtained.

**RESPONSE TO INTERROGATORY NO. 2:** Medicare Health objects to this Interrogatory as seeking irrelevant information and information that is disproportionate to the claims and defense in the litigation to the extent it goes beyond the call made to the named Plaintiff in this litigation. At this time, a class has not been certified and, accordingly, names of all employees who make outbound calls are not relevant to the current posture of the litigation. Additionally, Defendant will shortly file a Motion to Bifurcate Discovery seeking to limit the scope of discovery to only issues pertaining to Plaintiff directly.

Subject to and without waiving these objections, Medicare Health states that no employee, agent, or vendor of Medicare Health makes marketing outbound calls to promote goods and services unless and until there is already an established relationship with Medicare Health or until an opt-in and/or prior express written consent has been received by an individual requesting to be contacted. Medicare Health further states that its telephone calls are not telemarketing, but purely informational in nature.

With respect to Plaintiff specifically, Medicare Health obtained Plaintiff's information and a prior express written consent to be contacted from Inbounds.com f/k/a Data Prosper. Defendant than used DialedIn f/k/a Chase Data to dial Plaintiff's telephone number pursuant to the prior express written consent. Plaintiff then spoke with live agents from Virtual Buddy 24/7.

3

**INTERROGATORY NO. 3:**   Identify and describe the work of each employee or vendor identified in response to Interrogatory No. 2.

**RESPONSE TO INTERROGATORY NO. 3:**   Medicare Health objects to this Interrogatory as seeking irrelevant information and information that is disproportionate to the claims and defense in the litigation to the extent it goes beyond the call made to the named Plaintiff in this litigation. At this time, a class has not been certified and, accordingly, the work of "each employee" is not relevant to the current posture of the litigation.  Medicare Health also objects to this Interrogatory as vague and ambiguous as to which employees are at issue in this Interrogatory.  Additionally, Defendant will shortly file a Motion to Bifurcate Discovery seeking to limit the scope of discovery to only issues pertaining to Plaintiff directly.

Subject to and without waiving these objections, and based on Medicare Health's interpretation that this refers to the employees, agents, or vendors identified in the response to Interrogatory No. 2, Medicare Health states that no employee, agent or vendor of Medicare Health makes marketing outbound calls to promote goods and services unless and until there is already an established relationship with Medicare Health or until an opt-in and/or prior express written consent has been received by an individual requesting to be contacted. Medicare Health further states that its telephone calls are not telemarketing, but purely informational in nature.

With respect to Plaintiff specifically, see Defendant's response to Interrogatory No. 3 above for the information requested.

**INTERROGATORY NO. 4:**  Identify all third parties or sub-vendors used by your vendors to for you as part of your relationship with any vendor identified in response to Interrogatory No. 2.

4

**PLAPPX_6**

**RESPONSE TO INTERROGATORY NO. 4:**  Medicare Health objects to this Interrogatory because such information is not relevant to any party's claim or defense and is disproportional to the needs of the case at this time because the information as requested seeks information that has no bearing on the allegations in the putative Class Action Complaint.  As worded, this Interrogatory seeks information regarding any third party used by any vendor of Medicare Health, and is not limited to the matters at issue in the litigation.  Medicare Health further objects to this Interrogatory as overbroad and as seeking irrelevant information to the extent it seeks information regarding vendors beyond those involved in the call to the named Plaintiff.  At this time, a class has not been certified and, accordingly, *all* third parties or sub-vendors are not relevant to the current posture of the litigation.  Additionally, Defendant will shortly file a Motion to Bifurcate Discovery seeking to limit the scope of discovery to only issues pertaining to Plaintiff directly.

With regard to any subvendors or third parties directly involved with Plaintiff, Defendant does not have any further knowledge than what is contained in response to Interrogatory No. 2 above. Discovery is ongoing and Defendant will supplement this response if needed.

**INTERROGATORY NO. 5:**  Identify each of the individuals that spoke with Plaintiff from your company or any of its vendors.

**RESPONSE TO INTERROGATORY NO. 5:**  Medicare Health states that it is continuing to investigate the response to this Interrogatory and will supplement this response as discovery continues.

4914-0364-3244.1

PLAPPX_7

**INTERROGATORY NO. 6:** If you contend that Plaintiff provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained.

**RESPONSE TO INTERROGATORY NO. 6:** Plaintiff provided a prior written consent to be contacted by Defendant on or about July 6, 2024. For further details, please refer to the Verisk Marketing Solutions report and the lead information screenshot produced in Defendant's document production.

**INTERROGATORY NO. 7:** If you contend that a third party made the calls alleged in the complaint, identify that third party and state all facts in support of the same.

**RESPONSE TO INTERROGATORY NO. 7:** Medicare Health refers Plaintiff to its response to Interrogatory No. 2 above.

**INTERROGATORY NO. 8:** Identify all communications you've had with any third party, other than your counsel, regarding this lawsuit.

**RESPONSE TO INTERROGATORY NO. 8:** Medicare Health objects to this request as overbroad and unduly burdensome to the extent it seeks "all" communications with any third-party regarding this lawsuit. It would be burdensome and potentially impossible to conduct a review to ensure that "all" communications relating to this topic are located, reviewed and produced, and attempting to do so would not be proportional to the needs of the case. Medicare Health further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, attorney work-product doctrine and/or any other applicable privilege.

6

Subject to and without waiving these objections, pursuant to Fed. R. Civ. P. 33(d), non-privileged documents responsive to this Interrogatory will be produced.

**INTERROGATORY NO. 9:**  Identify by make, model, structure and location the system(s), platform(s), and/or equipment used by you, or any vendor, used to contact the Plaintiff.

**RESPONSE TO INTERROGATORY NO. 9:**  Medicare Health uses DialedIn f/k/a Chase Data for its dialer.

**INTERROGATORY NO. 10:**  State all facts in support of any affirmative defenses you have raised.

**RESPONSE TO INTERROGATORY NO. 10:**  Medicare Health interprets this Interrogatory as twenty-one separate Interrogatories.  Medicare Health objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege or the work-product privilege, or is asking for attorney impressions.  Subject to and without waiving these objections, Medicare Health refers Plaintiff to the facts evidenced by the discovery responses and initial disclosures served in this matter, as well as all documents that may be produced in this matter by all parties and third parties as possible facts and evidence that may be offered in support of Medicare Health's affirmative defenses.  In short, a call was placed to a number that Medicare Health had consent to contact. Further, Defendant does not use any prerecorded messages and does not make telemarketing calls. Defendant's telephone calls are informational in nature.

**INTERROGATORY NO. 11:**  Identify and describe in detail the process by which you (or any vendor acting on your behalf) "scrubbed" telephone numbers against the National Do Not Call

4914-0364-3244.1

PLAPPX_9

Registry during the relevant time period.  In your answer, identify all persons involved, the software or service provider(s) used, and the frequency of such scrubs.

**RESPONSE TO INTERROGATORY NO. 11:**  Medicare Health states that it is continuing to investigate the response to this Interrogatory and will supplement this response as discovery continues.

**INTERROGATORY NO. 12:**  Identify and describe all methods by which you claim to have obtained prior express written consent for outbound calls or texts made during the class period.  In your answer, identify each vendor, lead generator, or affiliate involved and specify whether any records of such consent exist.

**RESPONSE TO INTERROGATORY NO. 12:**   To the extent Medicare Health obtains leads with prior express written consents from vendors other than Inbounds.com f/k/a Data Prosper, Medicare Health objects to this Interrogatory as seeking irrelevant information and information that is disproportionate to the claims and defense in the litigation to the extent it goes beyond the call made to the named Plaintiff in this litigation. At this time, a class has not been certified and, accordingly, names of other vendors not connected to Plaintiff are not relevant to the current posture of the litigation. Additionally, Defendant will shortly file a Motion to Bifurcate Discovery seeking to limit the scope of discovery to only issues pertaining to Plaintiff directly.

As to Plaintiff, please see Defendant's response to Interrogatory Nos. 2 and 6 above.

**INTERROGATORY NO. 13:**  Identify each person or entity responsible for TCPA or Do Not Call Registry compliance during the relevant period, including their job titles, dates of service, and specific responsibilities.

4914-0364-3244.1

**RESPONSE TO INTERROGATORY NO. 13:**  Medicare Health states that it is continuing to investigate the response to this Interrogatory and will supplement this response as discovery continues.

**INTERROGATORY NO. 14:**  Identify all governmental investigations, inquiries, or complaints received from the FCC, FTC, state attorneys general, or any other regulator concerning outbound telemarketing during the relevant time period.

**RESPONSE TO INTERROGATORY NO. 14:**  Medicare Health objects to this Interrogatory because such information is not relevant to any party's claim or defense and proportional to the needs of the case because such information holds no bearing on the allegations in the putative Class Action Complaint.

**INTERROGATORY NO. 15:**  Identify any person (whether employed by you or not) whom you have disciplined, reprimanded, or taken similar action against for allowing or making allegedly unlawful or unauthorized outbound calls. In your answer, please identify all persons involved in any investigation, describe the reasons for your disciplinary action or reprimand, and describe the action taken against the person.

**RESPONSE TO INTERROGATORY NO. 15:**  Medicare Health objects to this Interrogatory because such information is not relevant to any party's claim or defense and proportional to the needs of the case because such information holds no bearing on the allegations in the putative Class Action Complaint.  Subject to and without waiving these objections, Medicare Health states no such actions have been taken against any person by Medicare Health.

**PRELIMINARY STATEMENTS TO REQUESTS FOR**

9

**PLAPPX_11**

**PRODUCTION OF DOCUMENTS**

Defendant makes the following Preliminary Statements to Plaintiff's First Set of Requests for Production of Documents. The comments in these Preliminary Statements apply to each individual discovery request. Defendant will provide specific objections to each individual request as appropriate. These specific citations are not to be construed as a limitation on the statements below.

1.      Defendant is in the process of investigating and has not completed its investigation of facts, witnesses, or documents relating to this case, has not completed analysis of all available information, and has not completed preparation for trial. Investigation is continuing, however, and it is possible that future discovery and investigation may supply additional information or documents that may lead to additions to, changes in, or variations from the following responses. Defendant reserves its right to supplement these responses when or if subsequently discovered information is made available and to introduce and rely upon such information in the course of this litigation.

2.      Defendant will not produce information or documents protected from disclosure by the attorney-client privilege, work-product doctrine, common interest privilege, or any other applicable privilege or doctrine. In the event Defendant inadvertently produces privileged or protected documents, that production shall not constitute a waiver of the privilege or protection. Upon completion of production of documents, Defendant will produce a privilege log for any responsive, non-objectionable documents withheld as privileged.

3.      A statement herein that documents will be produced is a representation of Defendant's willingness to produce such documents if they exist and can be located by a reasonable, good faith effort, and not a representation that the documents in fact exist.

10

4914-0364-3244.1

4.      Defendant will produce documents on a rolling basis.

5.      Defendant specifically objects to Plaintiff's Definition No. 11 which seeks to require a near summary of each and every document that may be responsive to a particular request, as this would impose an undue burden on Defendant.  All of Defendant's document productions have been or will be produced as searchable documents with underlying metadata, and the documents are therefore equally as searchable by Plaintiff.  Defendant will not identify documents with the level of detail requested by Plaintiff.

**RESPONSES AND OBJECTIONS TO REQUESTS FOR
PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**  Please produce all non-attorney-client-privileged documents identified in or used to research or draft responses to interrogatories in this case.

**RESPONSE TO REQUEST NO. 1:**  Non-privileged documents responsive to this request will be produced.


**REQUEST FOR PRODUCTION NO. 2:**  Please produce all documents supporting or contradicting any affirmative defense made in any answer by you to any complaint in this case.

**RESPONSE TO REQUEST NO. 2:** Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" documents supporting or contradicting any affirmative defense made in any answer by Medicare Health to any complaint in this case.  It would be burdensome and not practical for Medicare Health to have to locate "all" documents that refer to such information, and attempting to do so would not be proportional to the needs of the case. Medicare Health further objects to this Request as vague and ambiguous to the extent it is unclear what document may support or contradict affirmative defenses.

4914-0364-3244.1

**PLAPPX_13**

Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control will be produced based on Medicare Health's good faith interpretation of this Request and good faith search for documents. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 3:**  Please produce all documents related to Plaintiff, including, but not limited to, all documents evidencing your relationship with Plaintiff or your investigation into outbound calls made to Plaintiff.

**RESPONSE TO REQUEST NO. 3:**  Medicare Health objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, attorney work-product privilege, and any other applicable privilege.  Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control will be produced. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 4:**  Please produce all documents relating to any failure by a vendor of yours to abide by your policies or any agreement you had relating to the sending of outbound calls.

**RESPONSE TO REQUEST NO. 4:**  Medicare Health objects to this Request as irrelevant and as seeking documents that are disproportionate to the claims and defenses in the litigation.  A class has not yet been certified in this litigation and, as such, a broad request for any failure to abide by policies simply is not relevant to the claims of the Plaintiff in this litigation.  Medicare Health

12

further objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" documents relating to any failure by a vendor of Medicare Health to abide by Medicare Health's policies relating to the sending of outbound calls.  It would be burdensome and not practical for Medicare Health to have to locate "all" documents that refer to such information, and attempting to do so would not be proportional to the needs of the case.  Medicare Health also objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, attorney work-product privilege, and any other applicable privilege.  Medicare Health invites a meet and confer as to this Request.

**REQUEST FOR PRODUCTION NO. 5:**  Please produce all complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. This request, but is not limited to, any written complaints (litigation or pre-litigation) received by you, any response sent, and any internal correspondence about the same.

**RESPONSE TO REQUEST NO. 5:**  Medicare Health objects to this Request as irrelevant and as seeking documents that are disproportionate to the claims and defenses in the litigation to the extent it seeks all complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. At this time, a class has not been certified and, accordingly, seeking these documents would provide information that has nothing to do with Plaintiff and will encompass documents that have no relevance to the claims and defenses in this litigation at this stage of the litigation.  The Request and burden is disproportionate to the needs of the case based on the current procedural posture of the litigation.  Medicare Health objects to this Request as overbroad and unduly burdensome to

13

the extent it seeks "all" complaints or do-not-call requests concerning outbound calls made by you or by any vendor of yours for allowing or making allegedly unlawful or unauthorized outbound calls. It would be burdensome and not practical for Medicare Health to have to locate "all" documents containing such information.

Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control will be produced as to Plaintiff only.

**REQUEST FOR PRODUCTION NO. 6:** All contracts or documents representing agreements with any vendor that provided you with the Plaintiff's telephone number or information.

**RESPONSE TO REQUEST NO. 6:** Medicare Health objects to this Request because it seeks documents that are not relevant to any party's claim or defense and proportional to the needs of the case because such information holds no bearing on the allegations in the putative Class Action Complaint. Medicare Health further objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" contracts or documents representing agreements with any vendor that provided you with the Plaintiff's telephone number or information. It would be burdensome and not practical for Medicare Health to have to locate "all" documents that refer to such information, and attempting to do so would not be proportional to the needs of the case. Medicare Health further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, attorney work-product doctrine and/or any other applicable privilege. Subject to and without waiving these objections, Defendant agrees to produce the contracts themselves only for those vendors relevant to Plaintiff as outlined in the interrogatories. Pursuant to Federal Rule

14

of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 7:**   All internal communications at your company regarding any vendor that provided you with the Plaintiff's telephone number or information.

**RESPONSE TO REQUEST NO. 7:**   Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" internal communications regarding any vendor that provided Medicare Health with the Plaintiff's telephone number or information.  It would be burdensome and not practical for Medicare Health to have to locate "all" internal communications that refer to such information, and attempting to do so would not be proportional to the needs of the case.  Medicare Health further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, attorney work-product doctrine and/or any other applicable privilege.

Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control will be produced based on Medicare Health's good faith search for documents. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 8:**   All contracts or documents representing agreements with any third party that dialed the calls to the Plaintiff.

**RESPONSE TO REQUEST NO. 8:**   Medicare Health objects to this Request because it seeks documents that are not relevant to any party's claim or defense and proportional to the needs of the case because such information holds no bearing on the allegations in the putative Class Action

Complaint.  Medicare Health further objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" contracts or documents representing agreements with any third party that dialed the calls to the Plaintiff.  It would be burdensome and not practical for Medicare Health to have to locate "all" documents that refer to such information, and attempting to do so would not be proportional to the needs of the case.  Medicare Health further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, attorney work-product doctrine and/or any other applicable privilege.  Medicare Health invites a meet and confer as to this Request.

**REQUEST FOR PRODUCTION NO. 9:**  All communications with any third party that dialed the calls to the Plaintiff.

**RESPONSE TO REQUEST NO. 9:**  Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" communications with any third-party that dialed the calls to the Plaintiff.  It would be burdensome and not practical for Medicare Health to have to locate "all" communications with any third-party that refer to such information, and attempting to do so would not be proportional to the needs of the case. Defendant further objects to the extent such documents are not relevant to any claim or defense in this matter, particularly insofar as such communications with DialedIn do not relate directly to this lawsuit or Plaintiff. Defendant will shortly file a Motion to Bifurcate Discovery seeking to limit the scope of discovery to only issues pertaining to Plaintiff directly.

Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control that relate directly to Plaintiff or this lawsuit will be produced based on Medicare Health's good faith search for documents.

16

Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B).  Please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 10:**  All internal communications at your company regarding any third party that dialed the calls to the Plaintiff.

**RESPONSE TO REQUEST NO. 10:**  Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" internal communications regarding any third-party that dialed the calls to the Plaintiff.  It would be burdensome and not practical for Medicare Health to have to locate "all" internal communications that refer to such information, and attempting to do so would not be proportional to the needs of the case.  Medicare Health further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, attorney work-product doctrine and/or any other applicable privilege. Defendant further objects to the extent such documents are not relevant to any claim or defense in this matter, particularly insofar as such communications do not relate directly to this lawsuit or Plaintiff. Defendant will shortly file a Motion to Bifurcate Discovery seeking to limit the scope of discovery to only issues pertaining to Plaintiff directly.

Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control that relate directly to Plaintiff or this lawsuit will be produced based on Medicare Health's good faith search for documents. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B).  Please see Defendant's documents produced on or before Tuesday, October 14, 2025.

4914-0364-3244.1

**PLAPPX_19**

**REQUEST FOR PRODUCTION NO. 11:**   All communications with any third party that provided you the Plaintiff's telephone number.

**RESPONSE TO REQUEST NO. 11:**  Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" communications with any third party that provided you the Plaintiff's telephone number.  It would be burdensome and not practical for Medicare Health to have to locate "all" communications that refer to such information, and attempting to do so would not be proportional to the needs of the case.  Finally, Medicare Health objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the attorney work-product doctrine. Defendant further objects to the extent such documents are not relevant to any claim or defense in this matter, particularly insofar as such communications with a Inbound.com do not relate directly to this lawsuit or Plaintiff. Defendant will shortly file a Motion to Bifurcate Discovery seeking to limit the scope of discovery to only issues pertaining to Plaintiff directly.

Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control that relate directly to Plaintiff or this lawsuit will be produced based upon a good faith search. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B).  Please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 12:**   All internal communications at your company regarding any third party that provided you the Plaintiff's telephone number.

**RESPONSE TO REQUEST NO. 12:**  Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" internal communications at your company regarding

18

any third party that provided you the Plaintiff's telephone number. It would be burdensome and not practical for Medicare Health to have to locate "all" communications that refer to such information, and attempting to do so would not be proportional to the needs of the case. Finally, Medicare Health objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the attorney work-product doctrine. Defendant further objects to the extent such documents are not relevant to any claim or defense in this matter, particularly insofar as such communications do not relate directly to this lawsuit or Plaintiff. Defendant will shortly file a Motion to Bifurcate Discovery seeking to limit the scope of discovery to only issues pertaining to Plaintiff directly.

Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control that relate directly to Plaintiff or this lawsuit will be produced based upon a good faith search. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 13:** Please produce all documents relating to insurance coverage of the acts alleged by Plaintiff, including, but not limited to, all potentially applicable policies issued by any insurer and all communications with any such insurers, including, but not limited to, reservation-of-rights letters, regardless of whether or not such coverage purports to exclude the acts alleged in this matter and regardless of whether or not such insurers have declined coverage in this matter.

**RESPONSE TO REQUEST NO. 13:** Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" documents relating to insurance coverage of the

19

acts alleged by Plaintiff, including, but not limited to, all potentially applicable policies issued by any insurer and all communications with any such insurers.  It would be burdensome and not practical for Medicare Health to have to locate "all" documents that refer to such information, and attempting to do so would not be proportional to the needs of the case.  Finally, Medicare Health objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or the attorney work-product doctrine.

Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control will be produced based upon a good faith search. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 14:**  Please produce all indemnification agreements under which a third party may be responsible for satisfying all or part of a judgment that may be entered against you in this action, and all communications with those third parties.

**RESPONSE TO REQUEST NO. 14:**  Non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control, if any, will be produced. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 15:**  Please produce all documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force. This request specifically includes, but is not limited to, policies related to the following:

(a)    compliance with the TCPA, including, but not limited to the rules, regulations, opinions, advisories, comments or filings of the Federal Communications Commission that relate to the TCPA or 47 C.F.R. § 64.1200;

(b)    obtaining or verifying prior express consent;

(c)    complying with E-SIGN Act, 15 U.S.C. §§ 7001 *et seq.*

**RESPONSE TO REQUEST NO. 15:**  Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force.  It would be burdensome and not practical for Medicare Health to have to locate "all" documents that refer to such information, and attempting to do so would not be proportional to the needs of the case.  Subject to and without waiving these objections, non-privileged policies regarding TCPA procedures responsive to this Request in Medicare Health's possession, custody, or control will be produced. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 16:**  Please produce all documents containing any of the following information for each outbound telemarketing call or text sent by you or your vendors, including to the Plaintiff:

(a)    the date and time;

(b)    the caller ID;

(c)    any stop request received;

(d)    any recorded message used;

21

(e)    the result;

(f)    identifying information for the recipient; and

(g)    any other information stored by the call detail records.

**RESPONSE TO REQUEST NO. 16:**  Medicare Health objects to this Request as irrelevant and as seeking documents that are disproportionate to the claims and defenses in the litigation to the extent it seeks documents showing the requested information for every call made during the relevant time period.  At this time, a class has not been certified and, accordingly, seeking this information regarding every outbound telemarketing call would provide information that has nothing to do with Plaintiff and will encompass communications that have no relevance to the claims and defenses in this litigation at this stage of the litigation.  The Request and burden is disproportionate to the needs of the case based on the current procedural posture of the litigation. Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" documents containing any of the following information for each outbound telemarketing call sent by Medicare Health or Medicare Health's vendors.  It would be burdensome and not practical for Medicare Health to have to locate "all" documents containing such information.

Defendant will shortly file a Motion to Bifurcate Discovery seeking to limit the scope of discovery to only issues pertaining to Plaintiff directly. Said motion will further outline the burden faced by Defendant in gathering all documents responsive to this request.  Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control that relate directly to Plaintiff will be produced based on Medicare Health's good faith search for documents. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

4914-0364-3244.1

**REQUEST FOR PRODUCTION NO. 17:** Produce all documents evidencing purported consent obtained for calls or texts made during the class period, including any lead generation forms, webforms or audit trails.

**RESPONSE TO REQUEST NO. 17:** Medicare Health objects to this Request as irrelevant and as seeking documents that are disproportionate to the claims and defenses in the litigation to the extent it seeks documents evidencing purported consent obtained for calls or texts made during the class period. At this time, a class has not been certified and, accordingly, seeking this information regarding every outbound telemarketing call would provide information that has nothing to do with Plaintiff and will encompass communications that have no relevance to the claims and defenses in this litigation at this stage of the litigation. The Request and burden is disproportionate to the needs of the case based on the current procedural posture of the litigation. Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" documents evidencing purported consent obtained for calls or texts made during the class period. It would be burdensome and not practical for Medicare Health to have to locate "all" documents containing such information.

Defendant will shortly file a Motion to Bifurcate Discovery seeking to limit the scope of discovery to only issues pertaining to Plaintiff directly. Said motion will further outline the burden faced by Defendant in gathering all documents responsive to this request. Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control that relate directly to Plaintiff will be produced based on Medicare Health's good faith search for documents. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 18:**  Produce all documents, reports, or data files that reflect scrubbing of call lists against the National Do Not Call Registry during the relevant time period.

**RESPONSE TO REQUEST NO. 18:**  Medicare Health objects to this Request as irrelevant and as seeking documents that are disproportionate to the claims and defenses in the litigation to the extent it seeks documents, reports, or data files that reflect scrubbing of call lists against the National Do Not Call Registry.  At this time, a class has not been certified and, accordingly, seeking these documents would provide information that has nothing to do with Plaintiff and will encompass communications that have no relevance to the claims and defenses in this litigation at this stage of the litigation.  The Request and burden is disproportionate to the needs of the case based on the current procedural posture of the litigation.  Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" documents, reports, or data files that reflect scrubbing of call lists against the National Do Not Call Registry.  It would be burdensome and not practical for Medicare Health to have to locate "all" documents containing such information.

Subject to and without waiving these objections, non-privileged documentation responsive to this Request in Medicare Health's possession, custody, or control will be produced as to Plaintiff only. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

**REQUEST FOR PRODUCTION NO. 19:**  Produce all communications with regulators (including the FCC, FTC, and state attorneys general) regarding telemarketing or Do Not Call compliance during the class period.

24

PLAPPX_26

**RESPONSE TO REQUEST NO. 19:**  Medicare Health objects to this Request as irrelevant and as seeking documents that are disproportionate to the claims and defenses in the litigation to the extent it seeks communications with regulators regarding telemarketing or Do Not Call compliance.  At this time, a class has not been certified and, accordingly, seeking these communications would provide information that has nothing to do with Plaintiff and will encompass communications that have no relevance to the claims and defenses in this litigation at this stage of the litigation.  The Request and burden is disproportionate to the needs of the case based on the current procedural posture of the litigation.  Medicare Health objects to this Request as overbroad and unduly burdensome to the extent it seeks "all" communications with regulators regarding telemarketing or Do Not Call compliance.  It would be burdensome and not practical for Medicare Health to have to locate "all" documents containing such information.

**REQUEST FOR PRODUCTION NO. 20:**  All communications with any third party concerning this litigation other than your attorney.

**RESPONSE TO REQUEST NO. 20:**  Medicare Health objects to this request as overbroad and unduly burdensome to the extent it seeks "all" communications with any third-party regarding this lawsuit.  It would be burdensome and potentially impossible to conduct a review to ensure that "all" communications relating to this topic are located, reviewed and produced, and attempting to do so would not be proportional to the needs of the case.  Medicare Health further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, attorney work-product doctrine and/or any other applicable privilege.

Subject to and without waiving these objections, non-privileged documents responsive to this Request will be produced. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), please see Defendant's documents produced on or before Tuesday, October 14, 2025.

Dated this 2nd day of October 2025.

> MEDICARE HEALTH ADVISORS LLC, Defendant
>
> By: */s/ Victoria H. Buter*
> Victoria H. Buter (#AT0009169)
> KUTAK ROCK LLP
> The Omaha Building
> 1650 Farnam Street
> Omaha, Nebraska 68102-2186
> Telephone: (402) 346-6000
> Facsimile: (402) 346-1148
> vicki.buter@kutakrock.com
>
> James A. Peterson, Esq.
> *(admitted pro hac vice)*
> PETERSON LEGAL P.A.
> 5079 North Dixie Highway, Suite 105
> Oakland Park, Florida 33334
> Telephone: (754) 444-8076
> james@petersonlegal.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 2, 2025, a true and correct copy of the foregoing was served by electronic mail upon the following:

Eric S. Mail, Esq.
PURYEAR LAW P.C.
3719 Bridge Avenue, Suite 6
Davenport, Iowa 52807
mail@puryearlaw.com

Anthony Paronich, Esq.
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

> */s/ Victoria H. Buter*
> Victoria H. Buter

26

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CIVIL ACTION FILE NO. 4:25-cv-00207-RGE-HCA

TOBY HOY, individually and on behalf of all
others similarly situated,

    Plaintiff,

v.

MEDICARE HEALTH ADVISORS, LLC,

    Defendant.

_____/

DEPOSITION OF MAX JAFFY
APRIL 10TH, 2026

12:04 P.M. - 1:13 P.M.

VIA ZOOM

Reported by Beni Garcia

Notary Public, State of Florida

Magna Legal Services

866-624-6221

www.MagnaLS.com





Page 18

to Medicare Health?

A.  No.

Q.  Okay.

A.  It ended prior to the start of this.

Q.  Got it.  So Medicare Health - actually, let me take a step backwards.  You understand this is a lawsuit alleging violations of the Telephone Consumer Protection Act?

A.  To the best of my knowledge, yes.

Q.  What is your understanding of the Telephone Consumer Protection Act?

A.  Just my opinion?

Q.  Fair clarification.  I'm asking of your understanding of what it regulates.

A.  It regulates unsolicited phone calls and protects the consumer from phone calls.

Q.  Including if they're on a National Do-Not-Call registry, correct?

A.  I would assume so.  I do not have full knowledge of the act though, so...

Q.  Okay.  No, and so, you don't have any knowledge about if it protects numbers that are on the National Do-Not-Call Registry or not?

A.  No.

Q.  Okay.  Prior to Medicare Health -- working at Medicare Health, did you have any interactions related to the Telephone

Page 19

Consumer Protection Act?

A.  No, sir.

Q.  Okay.  You are an employee of Medicare Health, correct?

A.  As an owner, yes.

Q.  Okay.  Are there any other employees of Medicare Health?

A.  Everyone -- all of our employees are 1099, but yes, I would consider them employees too, though.

Q.  Okay.  And so, Mr. Jaffy, I want to ask because I -- as you can see, I move around when I'm talking as well, but when you're answering questions, I've noticed you look up regularly.  Is there anything else that you're -- is there anything you're looking at in particular?

A.  No, sir.

Q.  And it's not -- I'm not suggesting that you need to stop.  I just wanted to make sure you weren't reading anything or communicating.

A.  No, sorry.  First deposition, a little nervous.  You know, just never done this before.

Q.  It's totally reasonable.  You don't need to apologize.  I just wanted to be sure because there are rules about reading things and that's fine.

A.  Yeah.

Q.  And so, are you familiar with a company called

Page 20

Inbounds.com?

A.  Yes.

Q.  And what is Medicare Health's relationship with Inbounds.com?

A.  It's a lead vendor.

Q.  And that's one of those four or five companies you were talking about earlier?

A.  Yes.

Q.  Where, to complete the thought, one of those four or five companies where Medicare Health obtains telephone numbers for the telesales?

A.  Yes.  There is also lead vendors that provide consumer-initiated inbound calls as well, so...

Q.  I see.  And do you know -- are you familiar with a company referred to as Data Prosper?

A.  Yes.

Q.  And do you understand that Inbounds.com used to be known as Data Prosper?

A.  Yes.

Q.  Okay.  And so, what did -- internally at the company, do you call them Inbounds.com or Data Prosper?  Because I just want to use the language you guys do.

A.  Both is acceptable.

Q.  Okay.

A.  I mean, I don't know.

Page 21

Q.  Okay.  So Inbounds.com is the company that provided Medicare Health Advisors with the plaintiff's phone number, correct?

A.  Correct.

Q.  And so Medicare Health did not obtain the plaintiff's phone number directly from him, correct?

A.  Correct.

Q.  And so Medicare Health relied on Inbounds.com for that information?

A.  Yes.

Q.  What is your company's understanding of what it is that Inbounds.com does to generate those phone numbers?

A.  They provide opt-in leads for Medicare-qualified consumers.

Q.  And do you know how they purport to do that?

A.  Online.

Q.  And do you know what websites they use for that?

A.  No.

Q.  Okay.  And, in fact, do you know if Inbounds.com itself owns or operates any websites for the telephone numbers it sells Medicare health?

A.  I do not know.

Q.  Would it surprise you to hear that in response to a subpoena in this case, Inbounds.com has identified that they themselves used an additional third party to acquire that



Page 22

information?

MR. PETERSON: Object to form.

THE WITNESS: Sorry, James, you cut out.

MR. PETERSON: You can answer. Object to form. You can answer.

THE WITNESS: So a little bit, but partially.

BY MR. PARONICH:

Q. I understand that, but can you explain what you mean by partially in this context?

A. I assumed that they also generated leads themselves, which...

Q. Okay. Have you had any conversations with Inbounds.com about this lawsuit?

A. Yes.

Q. Who did you have those conversations with?

A. There's a few different people providing the Jornaya or the form through their team. And yeah, just communicating with the team about, you know, what's going on to collect relevant information pertaining to Toby.

Q. Did you -- when you say Toby, you mean the plaintiff in this case, right?

A. Yes.

Q. Okay. When you say you communicated with them, was that done via email or phone call?

A. Email.

Page 23

Q. Do you communicate with Inbound.com in writing in any form other than email, such as Slack or text messaging?

A. Not on Slack. There are some text messages, but no Slack or Teams, just mostly via email.

Q. Understood. Do you believe you sent them any text messages about this phone number and plaintiff?

A. No, sir.

Q. Okay. Do you know that you didn't?

A. Yes.

Q. Okay. And is that because you searched those text messages as part of discovery in this case?

A. Yes.

Q. Understood. So other than emails to Inbounds.com about this lawsuit, did you have any telephone calls with them?

A. As it relates to the defendant, no.

Q. Yeah, understood. Do you mean as it relates to this phone number at issue, this plaintiff?

A. Yeah, plaintiff. Sorry. Yes.

Q. Okay. And so I just want to make sure I understand. Do you have an understanding that Inbounds.com purchased the plaintiff's information from yet another third party?

A. As of today, yes.

Q. When did you first learn that?

A. As we were collecting the video playback.

Q. I see. So as part of gathering information in

Page 24

response to this lawsuit, that was the first time you learned a third party was involved?

A. So in terms of some of the data in the past, I guess there could have been some involvement, but for the first time really uncovering it all, yes.

Q. Okay. When you learned that, did you have a conversation with Inbounds.com about that fact?

A. No, I did not.

Q. Okay. And your company still works with Inbounds.com, correct?

A. No, and yes. We don't buy any data anymore from Inbounds.com.

Q. What's the yes portion of that answer then?

A. We are only taking inbound calls.

Q. I see. So when did your company stop purchasing data from Inbounds.com?

A. January 1st of 2026.

Q. Was that decision in any way related to this lawsuit?

A. Honest answer, yes.

Q. Yeah. No, please, we are looking for honest answers here. So why -- so you said yes. Is it the only reason that your company stopped purchasing data from them?

A. We stopped purchasing data from -- 100%, we switched our business model in 2026.

Q. I see. So with Inbounds.com and every other vendor

Page 25

that your company now works with, they are only taking consumer-initiated calls?

A. And there is one vendor that does onshore transfers in a very limited capacity, but we did switch, you know, to not buying the data ourselves and doing it.

Q. And that was to avoid being in the situation that the company's in with respect to this lawsuit?

A. There are other factors, but this is part of that.

Q. You said there are other factors. What are the other factors?

A. The cost and the work and technicalities involved in this aspect.

Q. Okay. So then, turning back to the plaintiff's phone number specifically that was purchased from Inbounds.com, you learned while gathering information that the source of the phone number was a third-party website that was not owned by Inbounds.com, correct?

A. Sorry. Can you repeat that?

Q. Of course. So I was turning back now to the plaintiff's telephone number specifically, and then I was just confirming your earlier testimony that while gathering information related to this lawsuit, you learned that the website that's the source of the plaintiff's phone number is a third-party website not owned by Inbounds.com, correct?

A. Yes. Correct.

MAGNA
LEGAL SERVICES

Page 26

Q.  And so Medicare Health also does not own that website, correct?

A.  Correct.

Q.  Medicare Health did not design that website, correct?

A.  Yes.

Q.  Did Medicare Health ever participate on any disclosures that appear on that website?

A.  No.

Q.  Okay.  Has Medicare Health ever seen any of the source code of that website?

A.  Can you clarify what you mean by source code?

Q.  Sure.  When a website is created, there are commands that are put into the computer that makes it look the way that it does.  And so Medicare Health has never seen any of that information for the website that Mr. Hoy allegedly visited, correct?

A.  Just the opt-in is the only thing we've seen.  The opt-in disclosure.

Q.  And when you see the opt-in disclosure, that didn't come from the third-party website itself, correct?  Didn't you acquire that from Jornaya?

A.  I'm not referring to that.  I'm referring to the -- on the website itself where it shows you the wording to make sure it follows Medicare guidelines.

Q.  I see.  When did your company first see that?

Page 27

A.  I don't have an answer on the exact date.

Q.  Was it before or after this lawsuit?

A.  I don't have the exact date for you.

Q.  And I know.  I'm not asking for the exact date, but I'm just trying to understand when it was.  So let me ask it differently.  What do you remember about that interaction where you viewed that language?

A.  So again, I don't know if it was directly pertaining to this website, but in Medicare, we uploaded that opt-in form that Inbounds said they were using to our carriers for approval to dial these records for Medicare.

Q.  I see.  So the language you looked at was the language that you worked on with Inbounds.com, correct?

A.  I didn't work on it, but yes.

Q.  Let me rephrase.  The language you were referring to is the language that Inbounds.com showed you and that you sent for approval?

A.  Yes.

Q.  Okay.  And that language was from Inbounds.com, correct?

A.  Or Data Prosper.  Either or, yes.

Q.  Sure.  And Inbounds.com or Data Prosper, we've agreed they are not the company that owned and operated the website that Mr. Hoy's number came from, correct?

A.  Correct.

Page 28

Q.  Do you know the name of the company that did own or operate the website?

A.  James and I have discussed, but --

Q.  As a reminder --

A.  Oh, yeah.  Sorry.

Q.  It's okay, you don't have to apologize, I just wanted to --

A.  I did not know prior.

Q.  You did not know the name of the company prior to having a conversation with your attorney, correct?

A.  Correct.

Q.  Okay.  But you do now know the name of the company, is that correct?

A.  Yes.

Q.  Okay.  Now, I don't want to hear about any of the conversations you had with Mr. Peterson, but I just want to know what is the name of that company?

A.  I don't remember it, but I do know, so...

Q.  Okay.  So that company, whose name you can't remember right now, has Medicare Health had any direct interactions with them?

A.  No, sir.

Q.  Okay.  And has Medicare Health ever seen any access logs to any of their websites where it has a record of someone visiting the website?

Page 29

A.  No, sir.

Q.  Has Medicare Health ever performed any analysis or seen any analytics on the accuracy of any information from that company?

A.  No, sir.

Q.  And, in fact, your company wouldn't have a contractual right to access any of that data for that website, correct?

A.  I don't have knowledge on that, but I would assume so.

Q.  You would assume that your company does or does not have a contractual right to that data?

MR. PETERSON:  Object to form.

THE WITNESS:  I'm having a hard time answering that.  Can you clarify, Anthony?

BY MR. PARONICH:

Q.  Yeah, certainly.  And I think I should probably try to ask a less confusing question and maybe that'll get us there, which is, there is the name of the company that operates the website, whose name you can't remember right now, but you know it, correct?

A.  Correct.

Q.  And you don't have any knowledge of Medicare Health having a contract directly with that company, correct?

A.  No direct contract, correct.

Q.  Okay.  And do you have any knowledge of any contractual right in your contract with Inbounds.com that would



Page 30

give you access to a third party's website's data?

A. I don't know.

Q. Okay. And with respect to Inbounds.com, has Medicare Health ever hired an outside company to audit the practices of Inbounds.com?

A. No.

Q. On this third-party website, does Medicare Health have any knowledge of what company or any individuals that loaded any alleged consent data onto the website?

A. No.

Q. And so your company relies on Inbounds.com's representations with respect to any alleged consent, correct?

A. Yes.

Q. And so other than acquiring this video often, has your company been able to do anything else to confirm their belief that it was the plaintiff who went to this website?

A. I would refer that to James.

Q. Let me ask a slightly different question then. Outside of any steps taken in this litigation, has your company taken any steps to confirm that it was, in fact, the plaintiff who allegedly went to this website?

A. No, everything is going through our attorney.

Q. Got it. So I want to move on to the second -- to Exhibit 2.

A. Okay.

Page 31

Q. Which now should be available for you to download and view. Let me know when you've had a chance to access that document.

(Plaintiff's Exhibit Number 2 was marked for identification.)

A. I'll wait on James. I have it open.

MR. PARONICH: James, are you good?

MR. PETERSON: Yeah, I'm good.

BY MR. PARONICH:

Q. Okay. So Mr. Jaffy, you see this document in front of you? It has a Bate stamp of 109. Do you see that number at the bottom right corner?

A. Yes. Where do you see -- sorry, yes.

Q. Yeah. You see the red number at the bottom corner? Can you explain to me what this is?

A. I don't know what that is.

Q. So your company didn't create this document?

A. No.

Q. Okay. Do you know who created the document?

A. This was sent from Inbounds.

Q. Okay. So you don't know how the -- and I'm sorry, I just want to make sure I heard you correctly. Inbounds.com sent this to you?

A. Yes.

Q. Okay. And so Medicare Health is unable to testify about any of the specifics of how this document was created?

Page 32

A. Yes.

Q. Okay. Has Medicare Health done anything to independently verify the accuracy of the document?

A. No.

Q. Okay. We can close that.

A. So we can close that? Sorry.

Q. Yeah. No, I think I mumbled. That is what I tried to say.

A. Okay. Thank you.

Q. Yeah. And so just -- you don't need to pull it back up unless you want to, but I just want to make sure we're clear that any information contained in that document is information that Medicare Health learned from Inbounds.com as opposed to any of its business records?

A. Correct.

Q. Okay. Let's move on to Exhibit 3. It's a little bigger, but now it should be available.

(Plaintiff's Exhibit Number 3 was marked for identification.)

A. Okay. I have it open if James is ready.

Q. Oh, yeah. Do you recognize this document?

MR. PETERSON: Yeah --

MR. PARONICH: I'm sorry. James, did I interrupt you?

MR. PETERSON: Yeah. No, no, you -- I'm ready. I've got it up.

MR. PARONICH: Okay, cool.

Page 33

BY MR. PARONICH:

Q. And so, Mr. Jaffy, do you recognize this document?

A. No, I do not.

Q. Okay. I'll show -- I'll represent -- well, first, I'll ask you, do you see that red number at the bottom right?

A. I can scroll down and try to see. 0116?

Q. Yeah. So I'll represent to you that that means that it's a document that's been produced in connection with this litigation. So I just want to make sure that you don't recognize it?

A. No, I do not.

Q. Okay. And you do not believe this is a document that came from Medicare Health systems?

A. No.

MR. PETERSON: Object to form.

BY MR. PARONICH:

Q. Did this document come from Medicare Health systems?

MR. PETERSON: Object to form. Anthony, I think this is simple. Medicare Health Systems, I don't think that's who you mean.

MR. PARONICH: I just want to -- I appreciate the clarification. I just want to first establish with Mr. Jaffy that this isn't a document that came directly from the defendant's system.

MR. PETERSON: Medical Health Advisors.


MAGNA
LEGAL SERVICES

Page 38

A. They helped to engage the consumer to -- again, a second line to qualify interest in hearing about opportunities to upgrade benefits.

Q. I see. And so did Virtual Buddy just call the telephone numbers that Medicare Health provided them?

A. They -- yes, but -- yes and no.

Q. I understand the yes. What about the no?

A. They had limited access to the client's information for regulatory purposes.

Q. I see. So they had the phone number they had to call, but they had limited other access to information that Medicare Health may have had about the individual?

A. Yes.

Q. Okay, got it. In terms of what they said on the phone, where did that information come from?

A. A script.

Q. And was that a script that Medicare Health prepared?

A. Alongside Virtual Buddy.

Q. Okay. Do you know what technology Virtual Buddy used to make the calls?

A. They used DialedIn.

Q. It just oddly cut out there. They used what?

A. DialedIn in or ChaseData.

Q. Okay. And that's a predictive dialer?

A. It is a dialing system.

Page 39

Q. Okay. And did Virtual Buddy ever utilize any prerecorded messages?

A. No.

Q. And how do you know that?

A. We listened to the calls as well as know their - I mean, no, we listened to the calls is the primary way to verify. But yeah, that would be it.

Q. When you say you listened to the calls, can you explain to me that process?

A. We'll go back on previous recordings to ensure they are not speaking out of line.

Q. I see. So you'll review previously completed calls?

A. Correct.

Q. Okay. And so then how do you know that a prerecorded message wasn't used on those calls to get someone to answer?

A. I mean, of course, there's no way to guarantee, but relationship and trust with Virtual Buddy would tell me that they do not.

Q. I understand. How long did Medicare Health work with Virtual Buddy?

A. 2023 to 2025.

Q. Did the relationship with Virtual Buddy end when the outbound calling practice for Medicare Health ended?

A. Correct.

Q. Okay. Did Medicare Health Advisors have a formal

Page 40

written TCPA compliance policy?

A. We had outlines in our training materials, and we had some documentation in our agent onboarding.

Q. Okay. Other than this lawsuit, has Medicare Health ever received a TCPA complaint?

A. No, sir.

Q. Okay. Are you aware of any documentation produced in this litigation about a prior potential lawsuit relating to the TCPA?

A. Oh, so there is -- sorry, I would like to retract. There is one that we had from a vendor, potentially saying they were sending us an inbound call, which we then audited and found out they sent a transfer. So that's the only other one that we've had that's -- I mean, pending, going on as well, but nothing prior.

Q. I see. You said a vendor. Do you know who the vendor was?

A. Yes.

Q. Was it Inbounds.com?

A. No.

Q. Who was it?

A. Unity Health.

Q. As a result of that investigation, did Medicare Health terminate Unity Health?

A. We suspended the vendor that they're using, along with

Page 41

Unity Health handled the case.

Q. I see. Medicare Health made an indemnity demand to Unity Health?

A. In legal terms, I don't know.

Q. Fair enough. Let me ask a better question then. With respect to any financial responsibility that came as a result of the case, did Unity Health pay for that?

A. Yes.

Q. Okay. Did Medicare Health make a similar demand to Inbounds.com in connection with this case?

A. There has been conversation, yes.

Q. Okay. And has Inbounds.com taken on the same position as Unity Health to address any financial issues arising from this case?

A. Not all of it, no.

Q. When you say not all of it, can you explain to me what you mean without revealing any conversations with your attorney?

A. No.

Q. Okay. Well, then let me ask a question that will try to avoid conversations with your attorney. Is it fair to say that a portion of any financial liability that has been incurred to date has been paid by Inbounds.com?

A. Yes.

Q. Okay. And is there a formal written agreement about the amount of Inbounds.com financial responsibility?





**EXHIBIT 3**

PLA_PX_35

Account Number: ███████
Bill Date: 12/02/24
Invoice Number: ███████

PLA_PX_36



Detail of Voice Usage  Total Plan with Payback   (Continued)
Toby Hoy                                                515-███

| Line | Date | Time | Calls To | Number Called | Feature | Period | Min | Airtime Charge | Toll Charge | Add'l Charge | Amount |
|------|------|------|----------|---------------|---------|--------|-----|----------------|-------------|--------------|--------|
| 147 | 11/18 | 09:49AM | INCOMING | 515-317-1036 | | | 1 | 0.00 | | | 0.00 |

Detail of Voice Usage  Total Plan with Payback   (Continued)
Toby Hoy                                                515-███

| Line | Date | Time | Calls To | Number Called | Feature | Period | Min | Airtime Charge | Toll Charge | Add'l Charge | Amount |
|------|------|------|----------|---------------|---------|--------|-----|----------------|-------------|--------------|--------|
| 161 | 11/19 | 11:48AM | INCOMING | 515-328-8458 | | | 1 | 0.00 | | | 0.00 |
| 198 | 11/21 | 03:41PM | INCOMING | 515-317-1035 | | | 6 | 0.00 | | | 0.00 |
| 203 | 11/22 | 09:36AM | INCOMING | 515-317-1032 | | | 1 | 0.00 | | | 0.00 |
| 204 | 11/22 | 09:37AM | BOONE | IA 515-317-1032 | | | 1 | 0.00 | | | 0.00 |



PLA_PX_37



PLA_PX_38



PLA_PX_39



Detail of Voice Usage  Total Plan with Payback     (Continued)
Toby Hoy                                                         515-

| Line | Date | Time | Calls To | Number Called | Feature | Per-iod | Min | Airtime Charge | Toll Charge | Add'l Charge | Amount |
|------|------|------|----------|---------------|---------|---------|-----|----------------|-------------|--------------|--------|
| 238 | 10/28 | 07:54PM | INCOMING | 515-328-8460 | | | 1 | 0.00 | | | 0.00 |

Detail of Voice Usage  Total Plan with Payback     (Continued)
Toby Hoy                                                         515-

| Line | Date | Time | Calls To | Number Called | Feature | Per-iod | Min | Airtime Charge | Toll Charge | Add'l Charge | Amount |
|------|------|------|----------|---------------|---------|---------|-----|----------------|-------------|--------------|--------|

Detail of Voice Usage  Total Plan with Payback     (Continued)
Toby Hoy                                                    515-████████

| Line | Date | Time | Calls To | Number Called | Feature | Per-iod | Min | Airtime Charge | Toll Charge | Add'l Charge | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|



| 155 | 08/15 | 10:20AM | INCOMING | 515-317-1030 | | | 1 | 0.00 | | | 0.00 |