**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

TOBY HOY, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

MEDICARE HEALTH ADVISORS LLC

    Defendant.

CIVIL ACTION FILE NO. 4:25-cv-00207-RGE-HCA

## Response to Defendant's Statement of Material Facts

Pursuant to Local Rule 56(b)(2), Plaintiff responds to the correspondingly numbered paragraphs of Defendant's Statement of Material Facts (Doc. 46-2) as follows. The Paragraph Headings indicated herein are the Defendant's own, incorporated for convenience, should not be construed as admissions that they are appropriate or accurate:

**SECTION A – BUSINESS OPERATIONS/RECORDKEEPING**

1. Admitted that MHA so describes its business.

2. Admitted that MHA so describes its business.

3. Admitted.

4. Admitted.

5. Admitted that Mr. Jaffy so testifies.

6. Admitted that MHA maintains some records; denied that MHA's records are complete, as MHA's produced call log begins at "Attempt 17," omitting at least sixteen earlier attempts and the October 2024 calls reflected in Plaintiff's carrier records. (APPX_124; Hoy Decl. ¶¶ 16-17.)

1

7.      Denied. MHA's CEO could not testify how key records were created, and MHA did nothing to verify them. (Jaffy Dep. 31:16-32:4.) MHA's call log is incomplete on its face, and no recording was produced for the connected November 18, 2024 call. (APPX_124; Hoy Decl. ¶¶ 15-17.)

8.      Admitted that MHA incorporates third party records. Denied that the third party records at issue are authenticated, accurate, or admissible. (Jaffy Dep. 30:3-22, 31:16-32:4; APPX_005-06); *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 873 (N.D. Ill. 2024).

9.      Admitted that Mr. Jaffy so states.

10.     Admitted.

11.     Admitted.

**SECTION B – LEAD ACQUISITION / VENDOR RELATIONSHIP**

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Admitted that the Lead Purchase Terms contain the quoted language.

18.     Admitted that the Lead Purchase Terms contain the quoted language. Denied that the leads, including the lead at issue, were in fact collected from individuals who provided prior express written consent. Inbounds' own executive reported the lead "shows as 'Yolanda'" with a non matching name and was accepted on July 27, 2023, long before the purported July 6, 2024 consent event or the parties' relationship. (APPX_005-06; Hoy Decl. ¶¶ 21-23.)

19.    Denied. Mr. Jaffy admitted MHA has no formal written TCPA policy (Jaffy Dep. 39:25-40:3), never audited Inbounds, took no steps to verify the lead or whether Plaintiff visited the source website (Jaffy Dep. 30:3-22, 31:16-32:4), and purchased Plaintiff's lead "[f]rom 350k aged" data. (APPX_006.) Plaintiff never consented. (Hoy Decl. ¶¶ 21-23.)

20.    Admitted.

21.    Admitted that Inbounds.com provided MHA with Plaintiff's telephone number. Denied that the associated lead pertained to Plaintiff or reflected his consent. (APPX_005-06; Hoy Decl. ¶¶ 21-23.)

22.    Admitted that Mr. Jaffy so testified concerning his understanding. Denied that the lead at issue was "Medicare-qualified," as it bore a 1968 date of birth identifying a consumer roughly a decade from Medicare eligibility. (APPX_102; Hoy Dep. 38:24-39:4, APPX_154-55.)

23.    Denied. The September 18, 2024 insertion order postdates both the purported July 6, 2024 lead event and the lead's actual July 27, 2023 acceptance date (APPX_005-06, APPX_126-27), and the assertion of a "substantially similar" earlier relationship rests solely on a self-serving supplemental declaration unsupported by any contemporaneous document.

**SECTION C – COMPLIANCE / TRAINING**

24.    Admitted.

25.    Admitted that Virtual Buddy 24/7 "fronters" were the humans involved in the outbound calls at issue.

26.    Admitted.

27.    Admitted.

28.    Admitted that MHA maintains a training presentation for its licensed sales agents. Denied that the presentation contains any procedure for compliance with the National Do Not

Call Registry or that it governed the Virtual Buddy fronters who were initially involved in the calls at issue after the robot portion. (APPX_042-101.)

29.    Admitted that the presentation contains the quoted statement. Denied that compliance was in fact a priority or that the presentation addresses Do Not Call Registry compliance. (APPX_042-101; APPX_125; Resps. to Rogs. 11, 13.)

30.    Admitted that the presentation contains the quoted statement. Denied as in the response to Paragraph 29.

31.    Admitted that the presentation references scripting and CMS guidelines. Denied as in the response to Paragraph 29.

32.    Admitted that the memorandum is dated February 20, 2025, after every call to Plaintiff at issue in this case. Further answering, the memorandum on its face admits that "fronters did not take this policy seriously, leading to client complaints." (APPX_125.)

33.    Admitted that the memorandum so states. Denied that any such policy was implemented or enforced during the period of the calls to Plaintiff, which the memorandum's own admissions refute. (APPX_125; APPX_124; Call 31 Tr., APPX_122.)

34.    Admitted that the memorandum so states. Denied as in the response to Paragraph 33.

35.    Denied. The assertion rests on a self-serving supplemental declaration. The deck addresses sales and CMS topics, not Do Not Call Registry compliance, and no contemporaneous DNC training materials for the calling fronters appear in the record and Defendant did not produce such materials requested in discovery. (APPX_042-101; Jaffy Dep. 39:25-40:3.)

36.    Admitted that licensed agents received onboarding and mock-call sales training; denied that the fronters who placed the calls received any Do Not Call Registry training. (APPX_125; Jaffy Dep. 39:2-18; Resps. to Rogs. 11, 13.)

37.    Denied. The February 20, 2025 memorandum announces "concerns about adherence" and admits fronters "did not take this policy seriously" (APPX_125). No pre-2025 written DNC instruction appears in the record, and when asked to describe its scrubbing process and identify its compliance personnel, MHA answered only that it was "continuing to investigate." (Resps. to Rogs. 11, 13.)

38.    Denied. Mr. Jaffy testified that MHA's "primary way to verify" was listening back to completed recordings, that "there's no way to guarantee" no prerecorded messages were used, and that he relied on "relationship and trust" with Virtual Buddy (Jaffy Dep. 39:2-18). No audit records were produced, and the produced recordings are themselves partial. (Hoy Decl. ¶¶ 10-14, 19-20.)

39.    Admitted that MHA claims to have maintained an internal list and disposition process. Denied that any such process was implemented or enforced, as MHA placed at least fifteen logged solicitation attempts in five weeks to Plaintiff's DNC number, and its vendor memo admits noncompliance. (APPX_124; APPX_125; Hoy Decl. ¶¶ 4-5.)

40.    Admitted that MHA claims those approximate entry counts. Denied that the list was enforced, and further answering, a suppression list of roughly 400,000 entries evidences the scale of MHA's outbound solicitation operation. (APPX_125; APPX_124.)

41.    Admitted that dispositions were required to be entered. Denied that dispositions were accurately or faithfully applied. (APPX_124; APPX_125; Hoy Decl. ¶¶ 15-17.)

42.    Admitted.

43. Admitted that MHA so describes its system. Denied that the system functioned as described with respect to Plaintiff. (APPX_124; Hoy Decl. ¶¶ 16-17.)

44. Admitted that MHA so describes its system. Denied as in the response to Paragraph 43.

45. Denied. MHA purchased Plaintiff's lead "[f]rom 350k aged" data (APPX_006), the lead was facially invalid and flagged by the vendor itself as matching "Yolanda" (APPX_005-06), and MHA admittedly did nothing to verify it. (Jaffy Dep. 30:3-22, 31:16-32:4.)

46. Denied. Plaintiff personally heard automated, artificial, prerecorded, robotic, or avatar-like voices at the beginnings of the calls (Hoy Decl. ¶¶ 8-9; Hoy Dep. 82:7-11, 88:13-17, APPX_161, APPX_164), MHA's recordings are partial (Hoy Decl. ¶¶ 10-14, 19-20), and Mr. Jaffy conceded "there's no way to guarantee" that no prerecorded voice was used. (Jaffy Dep. 39:2-18.)

**SECTION D – PLAINTIFF LEAD INFORMATION**

47. Admitted that Mr. Jaffy claims to have reviewed records.

48. Admitted that the July 1, 2025 email transmitted a lead record. Further answering, the same email reports that "[t]he only time this lead was accepted was 7/27/23," that later submissions were "rejected for dupe," and that the "name does n[o]t match and this shows as 'Yolanda' with the same PII in each lead." (APPX_005-06.)

49. Denied. The lead appears to reflect a different name of "Yolanda," either in addition to or in lieu of Plaintiff's name. Denied that the lead pertained to Plaintiff or reflected his consent. (APPX_005-06; APPX_102; Hoy Decl. ¶¶ 21-23.)

50. Denied. The lead appears to reflect a different telephone number, either in addition to or in lieu of the number here. (APPX_005-06.)

6

51.     Denied. The lead appears to reflect a different email address, either in addition to or in lieu of the email here. (APPX_005-06.)

52.     Admitted that the lead record at APPX_102 reflects that certificate identifier.

53.     Admitted that the July 7, 2025 email transmitted a Verisk report. Denied in that the Verisk report appears to address one lead, not the "Yolanda" lead.

54.     Admitted that the documents bear matching identifiers. Denied that the match authenticates the lead or establishes consent, as the records are layered, unauthenticated third-party hearsay. (Jaffy Dep. 31:16-32:4); *Hossfeld*, 726 F. Supp. 3d at 873.

55.     Admitted that the Verisk report contains purported opt-in lcnauge language. Denied that Plaintiff agreed to it (Hoy Decl. ¶¶ 21-23; Hoy Dep. 86:2-6, APPX_163). Further answering, the quoted disclosure authorizes contact only by licensed sales agents associated with seven named companies, none of which is MHA. (APPX_010-11.)

**SECTION E – CALL RECORDS / LIFE SPEAKERS / DNC DISPOSITION**

56.     Admitted.

57.     Admitted.

58.     Admitted.

59.     Admitted that MHA so claims. Denied that the practice was followed, as MHA produced no recording for the connected November 18, 2024 call (Attempt 24) on its own log. (APPX_124; Hoy Decl. ¶ 15.)

60.     Admitted that only four recordings were produced. Denied that those recordings are complete recordings of the calls Plaintiff received, as each omits the beginning of the call and their durations conflict with Plaintiff's carrier records and MHA's own segmented log. (Hoy Decl. ¶¶ 10-14, 19-20; APPX_124.)

61.     Admitted.

62.     Admitted that Plaintiff so testified concerning the partial clip MHA's counsel played. Denied insofar as any implication that no automated, artificial, or prerecorded voice was used on the call, which began before the clip. (Hoy Decl. ¶¶ 19-20; Hoy Dep. 82:7-11, APPX_161.)

63.     Admitted that Plaintiff so testified concerning the partial clip played. Denied as in the response to Paragraph 62. Further answering, Plaintiff explained in the same testimony, "That was a live one. She's called back. Robots don't call back. They're the first ones. We get transferred to them." (Hoy Dep. 82:7-11, APPX_161.)

64.     Admitted that Plaintiff so testified concerning the partial clip played. Denied as in the response to Paragraph 62.

65.     Admitted that Plaintiff answered "No." Denied as in the response to Paragraph 62. Further answering, Plaintiff's complete answer was: "No. You get transferred to them. You get transferred to a live person from the robot." (Hoy Dep. 88:13-17, APPX_164.)

66.     Admitted that Mr. Jaffy so states.

67.     Admitted that live individuals spoke during portions of the calls. Denied that no automated, artificial, or prerecorded voice preceded them or that the recordings are complate. (Hoy Decl. ¶¶ 8-9, 19-20.)

68.     Denied. (Hoy Decl. ¶¶ 8-9, 19-20; Hoy Dep. 82:7-11, 88:13-17, APPX_161, APPX_164; Jaffy Dep. 39:2-18.)

69.     Admitted.

70.     Admitted that the transcript so reflects.

71.    Admitted that the transcript reflects the answer "Yes." Further answering, Plaintiff is 57 years old and not eligible for Medicare (Hoy Dep. 8:1-2, 38:24-39:4, APPX_153-55).

72.    Admitted that the transcript reflects the answer "Yes." Denied as in the response to Paragraph 71.

73.    Admitted that Plaintiff testified his birth year is 1968. Further answering, Plaintiff testified that the date of birth on MHA's lead record "is not right for my birthday." (Hoy Dep. 86:2-6, APPX_163.)

74.    Admitted.

75.    Admitted.

76.    Admitted.

77.    Admitted. Further answering, Plaintiff's full statement was: "Get my name off your f[**]ing - Get my name off your list." (Call 31 Tr. 3:9-11, APPX_122.)

78.    Admitted that MHA's produced call records so reflect. Denied that those records are complete, as the log begins at "Attempt 17" and omits the October 2024 calls reflected in Plaintiff's carrier records. (APPX_124; Hoy Decl. ¶¶ 16-17.)

79.    Admitted that the log so reflects.

80.    Admitted that no activity appears in MHA's produced records after December 5, 2024. Denied that MHA's produced records are complete. (APPX_124; Hoy Decl. ¶¶ 16-17.)

81.    Admitted that MHA's records so reflect. Denied that MHA's records are complete, as in the responses to Paragraphs 78 and 80.

RESPECTFULLY SUBMITTED AND DATED this 11th day of June, 2026.

> _s/ Anthony I. Paronich_____
> Anthony I. Paronich
> **PARONICH LAW, P.C.**
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> Tel: (617) 485-0018
> Fax: (508) 318-8100
> anthony@paronichlaw.com
> _Counsel for the Plaintiff_

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2026, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all attorneys registered with the CM/ECF system.

> _s/ Anthony I. Paronich_____
> Anthony I. Paronich
> **PARONICH LAW, P.C.**
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> Tel: (617) 485-0018
> Fax: (508) 318-8100
> anthony@paronichlaw.com
> _Counsel for the Plaintiff_