**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| TOBY HOY, individually and on behalf of all others similarly situated, | : | CIVIL ACTION FILE NO. 4:25-cv-00207-RGE-HCA |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MEDICARE HEALTH ADVISORS LLC | : | |
| | : | |
| Defendant. | : | |
| | : | |
| _____/ | : | |

**PLAINTIFF'S NOTICE OF DEPOSITION PURSUANT TO 30(b)(6)**

DEPONENT:        MEDICARE HEALTH ADVISORS LLC

DATE:               April 10, 2026

TIME:               12:00 PM EST

LOCATION:        Magna Legal Services remotely

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiff will take the deposition upon oral examination of MEDICARE HEALTH ADVISORS LLC.

The deposition will be taken upon oral examination before an officer authorized to administer oaths and will continue from day to day. Testimony given during the deposition will be recorded by sound or stenographic means.

PLAINTIFF, individually and
on behalf of others similarly situated,


By:

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 18, 2026, I electronically served the foregoing on counsel for the parties.

*/s/ Anthony I. Paronich*
Anthony I. Paronich

Page 2

**EXHIBIT A**

Unless otherwise indicated, the RELEVANT TIME PERIOD for the purposes of this Notice of Deposition is from four years prior to the filing of the Complaint in this matter to the present. As used throughout this Notice of Deposition, the following terms have the following indicated meanings:

1.      The term "DOCUMENT" or "DOCUMENTS" as used herein shall refer to all writings as defined in Fed. R. Civ. P. 34(a)(1)(A), however produced or reproduced or archived or stored, within YOUR possession or subject to YOUR control, of which YOU have knowledge or to which YOU now have or previously had access, including all ELECTRONICALLY STORED INFORMATION.

2.      "ELECTRONICALLY STORED INFORMATION" ("ESI") as used herein means any electronic DOCUMENT or WRITTEN COMMUNICATION and includes, without limitation, the following:

a.      Activity listings of electronic mail receipts and/or transmittals;

b.      Output resulting from the use of any software program, including without limitation word processing DOCUMENTS, spreadsheets, DATABASE files, charts, graphs and outlines, electronic mail, text messages, AOL Instant Messenger (or similar program) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether such electronic data exist in an active file, deleted file, or file fragment; and

Page 3

c.      Any and all items stored on computer memories, hard disks, network servers, individual computer workstations or clients, thumb drives, jump drives, CDs, DVDs, cloud servers, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other vehicle for digital data storage and/or transmittal, including without limitation a personal digital assistant, smartphone and/or tablet, e.g., iPhone, Droid, Blackberry, Galaxy, HTC, iPad, iPod, Kindle, Nook or other device.  PLAINTIFF requests that ESI be processed and produced in a manner that preserves all metadata and that the parties confer regarding the production of metadata and the form or any electronic production prior to the gathering or processing of ESI.

3.      "DATABASE" or "DATABASES" includes any collection of data defined so that it can be reorganized and accessed in a number of different ways; any collection of data for one or more purposes, usually in digital form; a comprehensive collection of related data organized for convenient access, generally in a computer; a collection of information that is organized so that it can easily be accessed, managed, and updated; or a structured set of data held in a computer

4.      "POLICY" or "POLICIES" means any instruction(s), practice, procedure, directive, routine, guideline, rule, course of conduct or code of conduct, written or unwritten, formal or informal, recorded or unrecorded, which were or have been recognized, adopted, issued or followed by YOU.

5.      "MEDICARE HEALTH" means Defendant MEDICARE HEALTH ADVISORS LLC and includes, without limitation, any offices and locations of MEDICARE HEALTH ADVISORS LLC as well as any of its divisions, affiliates, subsidiaries, successors, predecessors, present or former partners, officers, directors, employees, agents, attorneys or representatives.

Page 4

6.    "PLAINTIFF" means the Plaintiff in this action.

7.    "PERSON" or "PERSONS" means any individual, partnership, association, corporation, joint venture, governmental or administrative body, or other business or legal entities.

8.    "THIRD PARTY" or "THIRD PARTIES" or "OTHER PARTY" means any individual, partnership, association, corporation, joint venture, or other business or legal entity not owned or controlled by YOU, or any PERSON that does not receive an annual salary from YOU, including but not limited to affiliates, agents, and subsidiaries of YOU.

9.    "VENDOR" or "VENDORS" is a subset of THIRD PARTY and when used in this deposition notice means any THIRD PARTY under contract with, hired by, employed by, paid by, or working for YOU for purposes of recorded calling efforts activities or services, including, but not limited to, generating leads, warm transfers, hot transfers, any other call transfers, making outbound pre-recorded calls, and the tracking or aggregation of data related to same.  VENDORS specifically includes, but is not limited to, the entity that provided the PLAINTIFF's lead or called the PLAINTIFF.

10.    "FUNCTIONALITY" means the set of functions or capabilities affiliation with computer software or hardware or an electronic device.

11.    "ARCHITECTURE" means models, policies, rules or standards that govern which data is collected, and how it is stored, arranged, integrated, and put to use in data systems.

12.    Topics that include the creation (including any sources of information or ESI), modification, use, ARCHITECTURE, and FUNCTIONALITY of any and all DATABASES include, but are not limited to, the following subtopics:

a.      The name of the system, its version, and platform on which it runs;

b.      Whether the systems store information on premises or on the cloud or a hybrid;

c.      The custodian of the data;

d.      The data used with each system;

e.      How stored data is accessed;

f.      Whether the systems archive information;

g.      Where the archives are stored;

h.      How data is archived;

i.      What reporting or analytics features do the systems have;

j.      What export features do the products have;

k.      What data fields do the products maintain; and

l.      Who is responsible for maintaining the systems.

13.     All other words shall have their ordinary definition as defined by Merriam-Webster's online dictionary, located at http://www.merriam-webster.com/.


## **TOPICS**

MEDICARE HEALTH is hereby directed to designate one or more officers, directors, managing agents, or other PERSONS to testify regarding the following topics:

1.      The general nature and scope of MEDICARE HEALTH'S business and/or services relating to outbound pre-recorded calls.  This subject includes, but is not limited to, MEDICARE HEALTH'S business activities, daily operations, portfolio of services offered, and business model as it relates to outbound pre-recorded calls.

2.      MEDICARE HEALTH'S POLICIES relating to outbound pre-recorded calls, including any POLICIES regulating actions by THIRD PARTIES or VENDORS that conduct outbound pre-recorded calls and/or provided to THIRD PARTIES or VENDORS that conduct outbound pre-recorded calls.

3.      MEDICARE HEALTH'S POLICIES, practices, and procedures relating to the Telephone Consumer Protection Act, 47 U.S.C. § 227, including, but not limited to, the rules, regulations, opinions, advisories, comments, or filings of the Federal Communications Commission that relate to 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(c)(2) & (d).

4.      MEDICARE HEALTH'S efforts to ensure TCPA compliance by THIRD PARTIES and VENDORS that conduct outbound pre-recorded calls for MEDICARE HEALTH, and its own employees (*e.g.*, requiring compliance training, audits, procedures to ensure appropriate consent regarding telephone calls, training of personnel, etc.).

5.      Any audits, investigations, reviews, or internal reports concerning MEDICARE HEALTH'S prerecorded or artificial voice calling systems, including:

- o   Efforts to identify or reduce wrong number or reassigned number calls; and
- o   Evaluations of compliance or system accuracy.

6.      Any complaints, grievances, investigations, or actual or threatened litigation from private individuals, business bureaus (such as the BBB), and government entities regarding outbound pre-recorded calls relating to MEDICARE HEALTH, and any corresponding response or investigation.

7.      MEDICARE HEALTH'S POLICIES for responding to complaints, including MEDICARE HEALTH'S intake, investigation, and tracking of complaints, and its development and implementation of those POLICIES.  All DATABASES or computer software programs MEDICARE HEALTH uses to track complaints.

8.      The facts and evidence that serve as the basis for each affirmative defense set forth in MEDICARE HEALTH'S Answer.

9.      and evidence that serve as the basis for MEDICARE HEALTH'S answers to all interrogatories propounded to MEDICARE HEALTH in this action.

10.      The facts and evidence that serve as the basis for MEDICARE HEALTH'S responses to all requests for production propounded to MEDICARE HEALTH in this action.

11.      The factual basis for MEDICARE HEALTH'S statement in its supplemental responses that it had no specific written policy or procedure governing prerecorded or artificial-voice collection campaigns, no written procedure for handling wrong-number or stop-call notifications, and no formal written TCPA compliance policy beyond verbal guidance to agents. This topic includes all training practices, unwritten procedures, scripts, guidance, or instructions that were actually used in practice.

12.      The factual basis for MEDICARE HEALTH'S statements regarding consent in its supplemental discovery responses, including any documents or information the company contends reflect consent for any of the individuals or numbers identified in its responses, the identity of the customer who purportedly provided Plaintiff's number, the method through which consent was allegedly obtained, and all systems or vendors involved in collecting, storing, or transmitting such information.

13.      MEDICARE HEALTH'S process for identifying the number of unique telephone numbers to which it made prerecorded or artificial-voice calls, as described in its supplemental discovery responses, including the specific Five9 review performed, all criteria or filters applied, the inability to determine whether numbers were cellular, any assumptions or exclusions used, and the method by which MEDICARE HEALTH concluded that only 11 additional call recipients existed.

14.     The factual basis for MEDICARE HEALTH's contention that Plaintiff provided prior express consent or prior express written consent to receive the calls at issue, including how, when, where, and by whom such consent was obtained.

15.     The specific language presented to Plaintiff that MEDICARE HEALTH contends constituted consent, including all versions of any webpage, webform, landing page, or disclosure relied upon.

16.     The complete chain of custody of Plaintiff's purported consent from the moment it was captured through the placement of the calls at issue, including all entities involved in generating, collecting, transmitting, verifying, storing, purchasing, or relying upon the consent.

17.     Whether any prerecorded voice, artificial voice, automated voice, sound file, or recorded audio segment was used in connection with any portion of the calls at issue, including how such audio was created, stored, uploaded, triggered, or played.

18.     The existence, preservation, and contents of any audio recordings of the calls at issue.

19.     MEDICARE HEALTH's contention, if any, that Plaintiff's telephone number was not a residential telephone subscriber within the meaning of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200, including all facts supporting that contention.

20.     Any investigation, database search, lookup, verification, analysis, or inquiry performed by or on behalf of MEDICARE HEALTH concerning whether Plaintiff's telephone number was residential or associated with a business.

21.     All policies, standards, criteria, or definitions in effect at the time of the calls for determining whether a telephone number was residential or non-residential.

22.     MEDICARE HEALTH's contention, if any, that Plaintiff's telephone number was not properly registered on the National Do Not Call Registry at the time of any call at issue, including all facts supporting that contention.

23.     The process used to scrub Plaintiff's telephone number against the National Do Not Call Registry prior to each call at issue, including subscription status, registry downloads, frequency of updates, vendor involvement, and results obtained.

24.     The factual basis for any contention that the calls to Plaintiff were informational rather than telemarketing.

25.     The factual basis for any contention that Plaintiff lacks Article III standing.