IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TOBY HOY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>MEDICARE HEALTH ADVISORS LLC,<br><br>        Defendant. | **No. 4:25-cv-00207-RGE-HCA**<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I.    INTRODUCTION

Plaintiff Toby Hoy sues Defendant Medicare Health Advisors LLC for violation of Federal and Florida state law regulating telemarketing calls on behalf of himself and similarly situated class members. Medicare Health Advisors argues it is entitled to judgment as a matter of law because Hoy has failed to show a genuine issue of material fact as to any of the three alleged claims.

For the reasons set forth below, the Court denies Medicare Health Advisors's motion for summary judgment.

## II.    BACKGROUND

### A.    Factual Background

The following facts are uncontested or viewed in the light most favorable to Hoy, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Medicare Health Advisors markets Medicare Part C plans by calling potential customers by phone. Def.'s Statement Material Facts Supp. Mot. Summ. J. ¶¶ 1, 10, ECF No. 46-2. Toby Hoy is fifty-seven years old and ineligible for Medicare. Pl.'s Statement Material Facts Resist.

Def.'s Mot. Summ. J. ¶ 3, ECF No. 52-4. Beginning in October 2024, Hoy received repeated telemarketing calls for Medicare plans. *Id.* ¶ 4. Medicare Health Advisors uses DialedIn software to dial numbers. *Id.* ¶ 15.

### B. Procedural Background

On June 16, 2025, Hoy filed a class action suit against Medicare Health Advisors in this Court. Compl., ECF No. 1. The lawsuit alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b), on behalf of the Robocall Class (Count 1); violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c), on behalf of the National Do-Not-Call Registry Class (Count 2); and violation of the Florida Telephone Solicitation Act, Florida Statute § 501.059, on behalf of Hoy and the Florida Telephone Solicitation Act Autodial Class (Count 3). *Id.* ¶¶ 80–96.

Medicare Health Advisors moves for summary Judgment. Def.'s Mot. Summ. J., ECF No. 46; Def.'s Br. Supp. Mot. Summ. J., ECF No. 46-1. Hoy resists and Medicare Health Advisors replies. Pl.'s Resist. Def.'s Mot Summ. J., ECF No. 52; Def.'s Reply Supp. Mot. Summ. J., ECF No. 64.

Additional facts are set forth below as needed. The Court concludes the briefing and record adequately present the issues for consideration and no hearing is required. *See* LR 7(c); Fed. R. Civ. P. 78(b).

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists where the issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

When analyzing whether a party is entitled to summary judgment, a court "may consider only the portion of the submitted materials that is admissible or useable at trial." *Moore v. Indehar*, 514 F.3d 756, 758 (8th Cir. 2008) (internal quotation marks omitted) (quoting *Walker v. Wayne Cnty.*, 850 F.2d 433, 434 (8th Cir. 1988)). The nonmoving party "receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mt. View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)). "The plaintiff must substantiate [the] allegations with sufficient probative evidence that would permit a finding in [plaintiff's] favor." *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and the moving party is entitled to judgment as a matter of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## IV.    DISCUSSION

Hoy brings three claims, all relating to telemarketing calls he received from Medicare Health Advisors. ECF No. 1. ¶¶ 80–96. Hoy's first claim alleges Medicare Health Advisors utilized automated recorded messages in violation of § 227(b) of the Telephone Consumer Protection Act ("TCPA"). *Id.* ¶¶ 80–84. Hoy next alleges Medicare Health Advisors violated the prohibition on "telephone solicitation to" "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200; ECF No. 1 ¶¶ 80–88.

Finally, Hoy alleges Medicare Health Advisors violated Florida statute § 501.059(8)(a) prohibiting "unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers." Fla. Stat. § 501.059(8)(a); ECF No. 1 ¶¶ 89–96. The Court addresses each claim in turn.

### 1.    Automated Recording Claim

In Count I, Hoy alleges Medicare Health Advisors "violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent." ECF No. 1 ¶ 81. Medicare Health Advisors asserts it is entitled to summary judgment as to this count because "[Hoy] has no admissible evidence establishing that any Medicare Health Advisors [ ] call involved a prerecorded or artificial voice." ECF No. 46-1 at 3.

The TCPA prohibits initiation of "any telephone call . . . using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). An essential element of Hoy's claim is therefore that Medicare Health Advisors used "an artificial or prerecorded voice" on the calls. *Id.* If no genuine issue of material fact exists as to whether Medicare Health Advisors used an artificial or prerecorded voice then Medicare Health Advisors is entitled to summary judgment as to Count I. *Cf. Brenner v. Am. Educ. Servs.*, 702 F. App'x 503, 504 (8th Cir. 2017).

"[Hoy] must substantiate his allegations with 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation [or] conjecture.'" *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (second and third alteration in original) (quoting *Gregory v. Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.*

In support of his contention that Medicare Health Advisors used an artificial or prerecorded

voice, Hoy offers his declaration. ECF No. 52 at 8; Hoy Decl. ¶¶ 8–9, ECF No. 52-1. Medicare Health Advisors counters, asserting "when confronted with the actual call recordings during deposition, Plaintiff repeatedly admitted the voices on the calls were not robotic." ECF No. 46-1 at 3. Medicare Health Advisors retrieved four recordings of calls with Hoy, identified as calls 27, 28, 29, and 31. Def.'s Ex. 6 Supp. Mot. Summ. J., ECF No. 46-3 at APPX_103; Def.'s Ex. 7 Supp. Mot. Summ. J., ECF No. 46-3 at APPX_112–APPX_115; Def.'s Ex. 8 Supp. Mot. Summ. J., ECF No. 46-3 at APPX_116–APPX_119; Def.'s Ex. 9, ECF No. 46-3 at APPX_120–APPX_123. These four calls represent all the calls Medicare Health Advisors asserts it found in its call recording system. Jaffy Decl. ¶ 44, ECF No. 46-3 at APPX_017. It was ordinary practice for Medicare Health Advisors to record connected calls. *Id.* ¶ 40; ECF No. 46-3 at APPX_016. Hoy acknowledged all four call recordings contained only human voices. Hoy Dep. 79:7–19; 82:3–11; 83:4–8; 88:13–17, ECF No. 46-3 at APPX_160, APPX_161, APPX_164.

While Hoy concedes the recordings contain only human voices, he argues "none contains the beginning of the call as Mr. Hoy received it" and the calls began with an artificial or prerecorded voice before switching to a human. ECF No. 52 at 9. Hoy cites to differences in logged call times between his US Cellular phone records and the length of call recordings to argue the recordings are only partial recordings of the call for which the portion containing an artificial or prerecorded voice has been excluded. *Id.* at 9–10. Taking such evidence in the light most favorable to Hoy, differences in call logging times suggests other communication may have occurred which was not recorded. Hoy argues such communication was "an automated, artificial, prerecorded, robotic, or avatar-like voice or sound" which played "before any live person came on." ECF No. 52 at 8. Hoy asserts such call-log discrepancies, combined with his sworn statements, create a genuine issue of material fact as to whether an artificial or prerecorded voice was used.

The Eighth Circuit has held that "[w]hile conclusory allegations in an affidavit or

declaration are not competent summary judgment evidence," neither "the absence of supporting documentation nor the self-serving nature of affidavits . . . serve to make such evidence inherently infirm." *Hamby v. Iowa*, No. 24-3548, 2026 WL 2223865, at *4 (8th Cir. Aug. 3, 2026) (alteration in original) (internal quotation marks and citation omitted). Instead, the Eighth Circuit clarified that a court "may discount a plaintiff's self-serving affidavit only where it clearly contradicts the plaintiff's earlier testimony under oath and where the plaintiff offers no explanation for the inconsistencies." *Id.* (internal quotation marks and citation omitted).

Hoy's declaration explains he was called on November 21, 2024, and heard an "automated, artificial, robotic portion" of the call then was connected to a human voice. Hoy Decl. ¶ 9, ECF No. 52-1 at 2. The call log produced by Medicare Health Advisors shows several separate logged events for Hoy's number. Def.'s Ex. 10, ECF No. 46-3 at APPX_124. This includes several zero second calls and a 288 second call. *Id.* Hoy's call log shows the call as six minutes long. Hoy Decl. ¶ 11, ECF No. 52-1 at 3. Hoy suggests the zero-duration row "likely reflects the robotic portion of the call." ECF No. 52 at 9. Because Hoy has consistently stated he heard a robotic voice on calls before being transferred to a human, the Court credits Hoy's statements as probative evidence at the summary judgment stage. *Cf. Hamby*, 2026 WL 2223865, at *4.

Hoy's theory is "[t]he robot comes first, the live agents come after, and the recording produced only capture the live agent portion of the call, not the robot portion." ECF No. 52 at 8. A rational trier of fact could find, based on the difference in call-logging times and Hoy's statements, that Medicare Health Advisors did use an artificial or pre-recorded voice, notwithstanding the produced recordings. As such, there is a genuine issue of material fact as to Count I.

### 2.    Do-Not-Call Claim

In Count II, Hoy asserts Medicare Health Advisors violated "the TCPA, 47 U.S.C. § 227,

6

by making calls, except for emergency purposes, to the telephone numbers of Plaintiff and members of the Class on the National Do-Not-Call Registry." ECF No. 1 ¶ 86. Medicare Health Advisors argues it "is entitled to summary judgment because the undisputed evidence establishes the TCPA's regulatory safe harbor." ECF No. 46-1 at 4. As such, Medicare Health Advisors concedes it did call individuals on the National Do-Not-Call Registry and focuses its argument for summary judgment on the statutory safe harbor provision exempting it from liability for such calls. *Id.* at 4–8. The Court therefore focuses on whether a genuine issue of material fact exists as to the safe harbor provision, not the undisputed allegation that Medicare Health Advisors did call individuals on the National Do-Not-Call Registry. The Court then addresses Medicare Health Advisors' argument regarding Hoy's consent to communication.

a.      Safe Harbor

The implementing regulation for the TCPA states "[n]o person or entity shall initiate any telephone solicitation to" "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). This protection applies to wireless cell phones as well. 47 C.F.R. § 64.1200(e). The regulation creates a safe harbor, stating an entity will not be liable if it can show "that the violation is the result of error and that as part of its routine business practice" it follows five standards:" 47 C.F.R. § 64.1200(c)(2).

> (A) Written procedures. It has established and implemented written procedures to comply with the national do-not-call rules;
> (B) Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;
> (C) Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact;
> (D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.
> . . .
> (E) Purchasing the national do-not-call database. It uses a process to ensure that it

> does not sell, rent, lease, purchase or use the national do-not-call database, or any part thereof, for any purpose except compliance with this section and any such state or federal law to prevent telephone solicitations to telephone numbers registered on the national database. It purchases access to the relevant do-not-call data from the administrator of the national database and does not participate in any arrangement to share the cost of accessing the national database, including any arrangement with telemarketers who may not divide the costs to access the national database among various client sellers

47 C.F.R. § 64.1200(c)(2)(i)(A)–(E). To prevail, Medicare Health Advisors must show there is no genuine issue of material facts as to any of the five required standards. *Cf. United States v. Dish Network LLC*, 75 F.Supp.3d 916, 925–26 (C.D. Ill. 2014). The Court does not address each required standard, and instead focuses on those for which the current record makes most apparent there is a genuine issue of material fact.

Medicare Health Advisors asserts it "maintained onboarding and training procedures for agents and call-center personnel," consistent with the written procedure and trainings standards—standards (A) and (B). ECF No. 46-1 at 6. In support of its argument, it cites to a slide in a training deck given during a sales onboarding presentation. *Id.*; ECF No. 46-3 at APPX_05. When asked during his deposition whether "Medicare Health Advisors ha[d] a formal written TCPA compliance policy?" Jaffy answered "[w]e had outlines in our training materials, and we had some documentation in our agent onboarding." Jaffy Dep. 39:25–40:13, ECF No. 52-2 at PLAPPX_34. Medicare Health Advisors also cites to a February 20, 2025 memo sent to a contractor—Virtual Buddy 24/7—responsible for making telemarketing calls on its behalf. Def.'s Ex. 11, ECF No. 46-3 at APPX_125.

While courts have not required written procedures "to be memorialized in a single, internal document," courts have required "evidence of a comprehensive, internal document that constitutes its policies and procedures regarding compliance with the national DNC rules." *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 136 (D. Conn. 2016) (finding evidence of an

8

adequate written policy where the contract between the defendant and a contractor included language requiring compliance). Medicare Health Advisors may properly cite to multiple documents to demonstrate written procedures which comply with the regulations. *CF. id.*

However, even taking all documents presented in totality, Medicare Health Advisors fails to demonstrate comprehensive written policies and procedures regarding compliance with the national Do-Not-Call rules as it relates to Virtual Buddy 24/7. The training slide deck does contain within it a written policy of adding individuals who do not wish to be called to the internal registry, or to direct them to the national registry, and to not re-engage with the caller or attempt to persuade them to stay on Medicare Health Advisors' call list. ECF No. 46-3 at APPX_056. While this training deck is far from the most robust or formal policy, it is a written procedure for ensuring its callers comply with the regulation and therefore satisfies the written policy requirement as it relates to the subset of Medicare Health Advisors callers who participated in this training.

However, Medicare Health Advisors also utilized Virtual Buddy 24/7 as part of its telemarketing operation and must show a written procedure for ensuring these callers comply with the regulation as well. Medicare Health Advisors puts forth the Virtual Buddy 24/7 memo to show such compliance by its vendor. Def.'s Ex. 11, ECF No. 46-3 at APPX_125. However, this memo is of no help to Medicare Health Advisors. The memo is dated February 20, 2025—after the calls to Hoy giving rise to this action. *Id.* A memo dated after the events at issue cannot establish that such written policy existed and was a routine business practice at the time of the calls at issue. *Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2026 WL 486556, at *3 (N.D.W. Va. Jan. 5, 2026) (finding a declaration and a memo dated in 2023 "does not identify which, if any, written procedures existed in Spring 2022, leaving it unclear whether the [defendant] had the required written policies during the relevant period").

The memo states "[t]his memo serves as an official notice regarding concerns about

9

adherence to the campaign's policy on placing angry customers on the Do Not Call (DNC) list. Recently, there have been instances where fronters did not take this policy seriously, leading to client complaints." Def.'s Ex. 11, ECF No. 46-3 at APPX_125. The memo then lists in writing what the policy requires. *Id.* The memo suggests several breaches of the policy indicating these breaches were more than merely the result of errors which deviated from Medicare Health Advisors' routine business practice of compliance. *See id.*

Medicare Health Advisors has failed to show there is no genuine issue of material fact for two reasons. First, there is a genuine issue of material fact as to whether there was a written policy and procedure in place with Virtual Buddy 24/7 prior to the memo. Second, repeated references to "instances where fronters did not take this policy seriously" indicates there is a genuine issue of material fact as to whether the repeated instances were mere error and deviation or the result of improper policy or training such that Medicare Health Advisors is not entitled to the safe harbor protections even if such a written policy did exist at the time. Def.'s Ex. 11, ECF No. 46-3 at APPX_125.

The Court briefly addresses standard (D)—accessing the national registry. Subsection (D) requires Medicare Health Advisors demonstrate "[i]t uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process." 47 C.F.R. § 64.1200(c)(2)(i)(D).

Medicare Health Advisors asserts it "maintained an internal DNC list throughout the relevant period." ECF No. 46-1 at 6. In Hoy's interrogatory no. 11, Hoy asked Medicare Health Advisors to "[i]dentify and describe in detail the process by which you (or any vendor acting on your behalf) 'scrubbed' telephone numbers against the National Do Not Call Registry during the

10

relevant time period." ECF No. 52-2 at PLAPPX_9–PLAPPX_10. Medicare Health Advisors responded, "it is continuing to investigate the response to this Interrogatory and will supplement this response as discovery continues." *Id.* at 10. The record is devoid of any such supplement or any other information regarding how or whether Medicare Health Advisors accessed and utilized the National Do-Not-Call Registry. Without any admissible evidence at this point, there is a genuine issue of material fact as to whether National Do-Not-Call Registry has met the requirements of element (D). As such, Medicare Health Advisors is not entitled to the safe harbor protection of § 64.1200(c)(2)(i).

b.      Consent

Medicare Health Advisors next argues it is nevertheless entitled to summary judgment because it "purchased inbound calls through Inbounds/Data Prosper under an insertion order requiring consent-based leads" and "the safe harbor inquiry asks whether Defendant maintained reasonable procedures—not whether consent can be definitively authenticated." ECF No. 46-1 at 7. Hoy resists this argument on three grounds. First, "[t]he lead record and Verisk report are out of court statements, generated by Inbounds, ArcaMax, and Verisk, layered one atop another, offered for the truth of the matters they assert" and "[n]o witness with personal knowledge has authenticated them." ECF No. 52 at 17. Second, "the consent language [Medicare Health Advisors] invokes does not authorize [Medicare Health Advisors] to call anyone." *Id.* Third, "[t]he lead [Medicare Health Advisors] relied on was facially invalid in at least five independent respects, each apparent from [Medicare Health Advisors]'s own documents, and any seller operating reasonable, implemented compliance procedures would have rejected it rather than dialed it more than fifteen times." *Id.* at 16. The Court first addresses the evidentiary issue, then briefly discusses the substantive consent issues.

In analyzing a summary judgment motion, a "court may consider only the portion of the

submitted materials that is admissible or useable at trial." *Moore v. Indehar*, 514 F.3d 756, 758 (8th Cir. 2008) (internal quotation marks and citation omitted); *see also Jones v. McNeese*, 746 F.3d 887, 894–95 (8th Cir. 2014). Absent a recognized exception, hearsay is inadmissible evidence. *See* Fed. R. Evid. 802. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801; *see ZW USA, Inc. v. PWD Sys., LLC*, 889 F.3d 441, 449 n.7 (8th Cir. 2018). The documents Medicare Health Advisors put forth to suggest it reasonably relied on the acquired leads are hearsay because they are being offered for the truth of the matter asserted—that Hoy visited certain websites and consented to the pop-up consent contained within. Though Medicare Health Advisors makes no arguments regarding the admissibility of the documents, the Court notes the documents may be admissible under Rule 803(6). Fed. R. Evid. 803(6). However, Medicare Health Advisors offers no declaration of an individual with knowledge sufficient to lay the foundation for any hearsay exception. The Court is therefore precluded from weighing these documents in considering Medicare Health Advisors' motion for summary judgment.

Moreover, even if Medicare Health Advisors did provide foundation sufficient for the Court to find a hearsay exception applies, the documents themselves demonstrate a genuine issue of material fact as to whether the purported consent was so facially flawed and illogical that no reasonable person could rely upon it. Section 64.1200(c)(2)(ii) permits a telemarketer to call a number registered in the National Do-Not-Call list if "[i]t has obtained the subscriber's prior express invitation or permission" and the permission is "evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller." 47 C.F.R. 64.1200(c)(2)(ii).

"The term prior express written consent means an agreement, in writing" "that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or

telemarketing messages." 47 C.F.R. § 64.1200(f)(9). The Verisk disclosure statement states "I provide my express written consent via chat/webform interaction for a licensed sales agent associated with Allied Insurance, Vincent Cortazar/Medigap Life, 100insure, Go Health, LLC, Healthplanone, LLC, Clearmatch Medicare, Medicare Solutions to contact me." ECF No. 46-3 at APPX_011. Medicare Health Advisors is not listed. Consent to be contacted by one seller is not consent to be contacted by all sellers. *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 397 (D. Mass. 2024) ("[C]onsent to receive texts from Chevrolet is not consent to receive texts from Mercedes."). Therefore, there exists a genuine issue of material fact as to whether Hoy consented to be contacted by Medicare Health Advisors even if Hoy did visit the site.

Further, Hoy points to several serious deficiencies with the purported consent such that a reasonable trier of fact could find Medicare Health Advisors was not reasonable in relying on the lead. The lead lists Hoy's year of birth as 1968—meaning the customer Medicare Health Advisors was calling in 2024 to sell a Medicare plan to was ineligible for Medicare according to the lead. Def.'s Ex. 5, ECF No. 46-3 at APPX_102. Medicare Health Advisors states it "understood Inbounds.com to provide 'opt-in leads for Medicare-qualified consumers.'" ECF No. 46-2 ¶ 22. A reasonable trier of fact could find it was not reasonable to rely on leads for "Medicare-qualified consumers" when the year of birth of a lead makes clear the customer is very likely not qualified for Medicare.

Following filing of this suit, Medicare Health Advisors emailed Inbounds—the originator of the Hoy lead—to request records regarding consent. Def.'s Ex. 1, ECF No. 46-3 at APPX_005–APPX_006. Inbounds stated "[t]he only time this lead was accepted was 7/27/23 and we had pinged you on later dates where it was rejected for dupe. That said name does n[ot] match and this shows as 'Yolanda' with the same PII in each lead." *Id.* at APPX_6. The Court notes the reference to communication informing Medicare Health Advisors about the lead being rejected as a "dupe"

13

is not hearsay because it is not for the truth of the matter asserted—that it was indeed a "dupe"—but instead that Medicare Health Advisors potentially had subjective awareness that reliance on this lead may not be reasonable given there were issues with the purported consent. *Cf. United States v. Walker*, 168 F.4th 533, 540 (8th Cir. 2026) (affirming admission of an out-of-court statement, in part, because it was "offered for a purpose other than the truth of the matter asserted"). The Court therefore may properly consider it in determining whether there is a genuine issue of material fact. Because a reasonable trier of fact could find it was not reasonable to rely on a lead where there was concern it was a "dupe," there is a genuine issue of material fact as to consent.

Medicare Health Advisors has failed to show there is no genuine issue of material fact as to both the safe harbor provisions and as to consent. There is a genuine issue of material fact as to whether it maintained a written policy regarding compliance in coordination with Virtual Buddy 24/7 as required by subsection (A) and as to whether it ever accessed or implemented the National Do-Not-Call registry as required by subsection (D). There is also a genuine issue of material fact as to whether Hoy consented to be contacted by Medicare Health Advisors and whether Medicare Health Advisors was reasonable in relying on the lead claiming Hoy consented. Medicare Health Advisors is not entitled to summary judgment as to Count II.

### 3.    Florida Telephone Solicitation Act

In Count III, Hoy alleges Medicare Health Advisors "made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers" in violation of Florida Statute § 501.059. ECF No. 1 ¶ 95. Medicare Health Advisors argues it is entitled to summary judgment as to this claim because Hoy "lacks evidence establishing an automated dialing system within the meaning of the FTSA." ECF No. 46-1 at 9. Medicare Health Advisors asserts Hoy "has no expert testimony, no technical evidence, no dialer configuration evidence, and no testimony identifying an automated

selection-and-dialing platform" and "[Hoy] asks the Court to infer automation solely because multiple calls occurred. That inference is insufficient at summary judgment." *Id.* Hoy responds, citing to Medicare Health Advisors' use of the "DialedIn" dialing system. ECF No. 52 at 19–20.

Under Florida law "[a] person may not make or knowingly allow to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers." Fla. Stat. § 501.059(8)(a). The parties dispute whether Hoy has produced sufficient evidence to create a genuine issue of material fact as to whether Medicare Health Advisors used an automated system for selection and dialing.

The Parties agree that "[Hoy] relies heavily upon the fact that [Medicare Health Advisors] utilized DialedIn." ECF No. 64 at 4; ECF No. 52 at 19–20. It is therefore not in dispute that Medicare Health Advisors uses the DialedIn software. The only dispute is whether Hoy has demonstrated the existence of a genuine issue of material fact as to whether use of the DialedIn software constitutes use of an automated system for selection and dialing of numbers such that it violates § 501.059(8)(a). Hoy cites to the publicly available description of DialedIn. ECF No. 52-4 ¶ 16. DialedIn is described as a "'Predictive Dialer Software'" which "'automates the process of dialing phone numbers and intelligently connects answered calls to available agents'" and "dials several numbers at once using AI-powered algorithms." *Id.* (citation omitted).

Medicare Health Advisors argues reliance on the manufacturer's description of the product is misplaced because it does not discuss "how [Medicare Health Advisors] actually used the platform in this case." ECF No. 64 at 4. The parties agree Medicare Health Advisors does use the DialedIn software and Hoy has produced evidence demonstrating such software is an automated system for the selection and dialing of telephone numbers. While Medicare Health Advisors suggests it did not use the software in such a manner, it has pointed to no evidence in the record which suggests it was used in a manner other than how the manufacturer describes the product. A

reasonable trier of fact, taking the evidence presently in the record in the light most favorable to Hoy, could find Medicare Health Advisors' use of the DialedIn software constitutes use of an automated system for the selection and dialing of telephone numbers in violation of § 501.059(8)(a). Hoy has therefore demonstrated a genuine issue of material fact as to whether Medicare Health Advisors used an automated system for the selection and dialing of telephone numbers. Summary judgment as to Count III is denied.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant Medicare Health Advisors Motion for Summary Judgment, ECF No. 46, is **DENIED**.

**IT IS SO ORDERED**.

Dated this 7th day of August, 2026.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE